Filed 5/29/18

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

|  |  |
|---|---|
| HARLEY SHINE,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>WILLIAMS-SONOMA, INC., et al.,<br><br>    Defendants and Respondents. | B277513<br><br>(Los Angeles County<br>Super. Ct. No. BC598805) |

        APPEAL from a judgment of the Superior Court of Los Angeles County, John Shepard Wiley, Jr., Judge.  Affirmed.
        McNicholas & McNicholas, Patrick McNicholas and Michael J. Kent; Bridgford, Gleason & Artinian and Michael H. Artinian; Frank Sims & Stolper and Scott H. Sims; Esner, Chang & Boyer and Holly N. Boyer for Plaintiff and Appellant.
        Orrick, Herrington & Sutcliffe, Melanie L. Bostwick, Randall C. Smith, Jessica R. Perry, and Allison Riechert Giese for Defendants and Respondents.

————————————

In this putative class action against defendants and respondents Williams-Sonoma, Inc., and Williams-Sonoma Stores, Inc. (jointly, Williams-Sonoma), plaintiff and appellant Harley Shine appeals from an order of dismissal following the sustaining of a demurrer without leave to amend.  Concluding the demurrer was properly sustained on res judicata grounds, we affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

In a previous wage and hour class action lawsuit, *Morales v. Williams-Sonoma, Inc. et al.* (Super. Ct. S.F. County, 2015, No. CGC532344) (*Morales*), plaintiff Elizabeth Morales sued the same defendants (Williams-Sonoma) on behalf of "all current and former California-based hourly-paid or non-exempt individuals employed by Williams-Sonoma Stores, Inc. at a Pottery Barn, Pottery Barn Kids, Williams-Sonoma, or West Elm store in California since June 24, 2009."  The operative first amended complaint in *Morales* alleged causes of action for overtime pay (Lab. Code, §§ 510, 1198),[1] meal period premiums (§§ 226.7, 512, subd. (a)), rest period premiums (§ 226.7), minimum wages (§§ 1194, 1197, 1197.1), final wages (§§ 201, 202), payment of all wages earned (§ 204), failure to provide proper wage statements (§ 226, subd. (a)), failure to keep proper payroll records (§ 1174, subd. (d)), failure to reimburse business expenses (§§ 2800, 2802), relief under the Labor Code Private Attorneys General Act of 2004 (PAGA) (§ 2698 et seq.), and relief under the Unfair Competition Law (Bus. & Prof. Code, § 17200 (UCL)).

---

[1] All further undesignated statutory references are to the Labor Code.

2

The *Morales* class action was resolved by a settlement agreement. The superior court approved the agreement and entered a stipulated order of dismissal on September 23, 2015. Mr. Shine, who worked at a Pottery Barn retail store in Beverly Hills from January to March 2013, was a member of the *Morales* settlement class and received a share of the settlement proceeds.

A short while later, Mr. Shine filed the present putative class action complaint against Williams-Sonoma. He brought this action on behalf of himself and all "non-exempt employees of Williams-Sonoma who worked at Williams-Sonoma, Pottery Barn, Pottery Barn Kids, West Elm, and or/Rejuvenation retail stores in California at any time from October 21, 2011 up to and continuing until the time that judgment is entered in this case . . . ."

The allegations in this case are based on the purported failure by Williams-Sonoma to pay the prospective class members reporting-time pay as required under Wage Order 7-2001 of the Industrial Welfare Commission (IWC) (Cal. Code Regs., tit. 8, § 11070). This wage order, which applies to mercantile companies,[2] provides that for "[e]ach workday an employee is required to report for work and does report, but is not put to work or is furnished less than half of said employee's usual or scheduled day's work, the employee shall be paid for half the usual or scheduled day's work, but in no event less than two (2)

---

[2] It is undisputed that Williams-Sonoma is a mercantile company. The term refers to "any industry, business, or establishment operated for the purpose of purchasing, selling, or distributing goods or commodities at wholesale or retail; or for the purpose of renting goods or commodities." (Cal. Code Regs., tit. 8, § 11070, subd. (2)(H).)

hours nor more than four (4) hours, at the employee's regular rate of pay, which shall not be less than the minimum wage." (Cal. Code Regs., tit. 8, § 11070, subd. (5)(A).)

Mr. Shine contends that reporting-time pay is required when an employee's on-call shift is canceled shortly before the scheduled start time. The complaint alleges that Williams-Sonoma required employees who "were scheduled for a regular shift immediately followed by an on-call shift that same day" (or vice-versa) to physically report or phone their employer shortly before the scheduled start of the on-call shift, but did not pay reporting-time pay for a canceled on-call shift. It alleges this is a violation of Wage Order 7-2001.

Based on this alleged violation, which was the first cause of action in the complaint, Mr. Shine also alleged related claims for failure to pay all wages earned at termination (§§ 200-203, second cause of action), failure to provide accurate wage statements (§§ 226, 226.3, third cause of action), and violation of the UCL (Bus. & Prof. Code, § 17200, fourth cause of action).

Williams-Sonoma demurred to the entire complaint, arguing that all the claims were based on the same theory: that Wage Order 7-2001 requires an employer in the mercantile industry to provide "reporting-time pay, a type of wage, when it asks an employee to remain available for a so-called 'on-call' shift, but then ultimately tells the employee that [he or] she does not need to work the shift." It raised three independent grounds to sustain the demurrer. First, by participating in the *Morales* settlement agreement and receiving damages for failure to pay wages due, Mr. Shine is barred under the doctrine of res judicata from bringing a second suit against the same defendants for failure to pay reporting-time pay, which also is a form of wages.

4

Second, Williams-Sonoma requested that the court take judicial notice of employment records, which allegedly showed that Mr. Shine was not told that his on-call shift had been canceled, and because he did not suffer the injury alleged in the complaint he lacks standing to bring this action. Third, Williams-Sonoma contended the plain language of Wage Order 7-2001 requires reporting-time pay only where an employee physically reports to the job site, ready to work. It claimed that Mr. Shine's attempt to extend reporting-time pay to situations where an employee does not physically report to work exceeds what is required by law for on-call shifts.

The trial court sustained the demurrer solely on res judicata grounds, and did not decide the other issues raised in the demurrer. Based on the order sustaining the demurrer without leave to amend, the court entered a judgment of dismissal with prejudice. This timely appeal followed.

## DISCUSSION

In reviewing a dismissal based on an order sustaining a demurrer, we apply the de novo standard. (*Balikov v. Southern Cal. Gas Co.* (2001) 94 Cal.App.4th 816, 819.) To determine whether the complaint states a cause of action as a matter of law, we give it a reasonable interpretation and accept the truth of all properly pleaded material facts. (*Ibid.*)

I

"'Under the doctrine of res judicata, a valid, final judgment on the merits is a bar to a subsequent action by the parties or their privies on the same cause of action.'" (*Villacres v. ABM Industries, Inc.* (2010) 189 Cal.App.4th 562, 575 (*Villacres*),

5

quoting *Amin v. Khazindar* (2003) 112 Cal.App.4th 582, 589–590 (*Amin*).)  The doctrine is based on public policy, recognizing there must "'"be an end to litigation."'"  (*Villacres*, *supra*, 189 Cal.App.4th at p. 575, citing *Citizens for Open Access etc. Tide, Inc. v. Seadrift Assn.* (1998) 60 Cal.App.4th 1053, 1065.)

A second aspect of the res judicata doctrine is issue preclusion, also known as collateral estoppel.  (*Frommhagen v. Board of Supervisors* (1987) 197 Cal.App.3d 1292, 1299 (*Frommhagen*).)  Under this aspect of the doctrine, "'"the prior judgment is res judicata on matters which were raised or could have been raised, on matters litigated or litigable. . . ."'"  (*Villacres*, *supra*, 189 Cal.App.4th at p. 576, quoting *Amin*, *supra*, 112 Cal.App.4th at pp. 589–590.)  Collateral estoppel precludes the litigation of a claim that was related to the subject matter of the first action and could have been raised in that action, even though it was not expressly pleaded.  (*Villacres*, *supra*, 189 Cal.App.4th at p. 576, citing *Interinsurance Exchange of the Auto. Club v. Superior Court* (1989) 209 Cal.App.3d 177, 181–182.)  This preclusive effect applies where, as here, the previous action was dismissed with prejudice based on a court-approved class action settlement agreement.  (*Villacres*, *supra*, 189 Cal.App.4th at p. 577.)

To analyze the collateral estoppel effect of the earlier judgment in *Morales*, the trial court properly exercised discretion to take judicial notice of the *Morales* pleading, settlement agreement, and stipulated judgment of dismissal.  (See *Frommhagen*, *supra*, 197 Cal.App.3d at p. 1299 [when reviewing demurrer based on res judicata, judicial notice may be taken of official acts or records of any court in this state]; Evid. Code, § 452.)  Where "all of the facts necessary to show that an action is

barred by res judicata are within the complaint or subject to judicial notice, a trial court may properly sustain a general demurrer. [Citation.]" (*Frommhagen*, at p. 1299.) Upon reviewing the *Morales* documents, the court found Mr. Shine was collaterally estopped to maintain this action against the same defendants on an issue that could have been raised in *Morales*. (See *Villacres*, *supra*, 189 Cal.App.4th at p. 576 [where requirements of collateral estoppel are met, claim that could have been raised in previous action between same parties may not be brought in subsequent action].)

The *Morales* complaint sought recovery of unpaid wages on behalf of class members employed by Williams-Sonoma since June 24, 2009. The allegations in that case included the claims of failure to provide meal and rest periods, overtime and minimum wages, timely wages, and final paychecks to the *Morales* class plaintiffs.

In the present action, Mr. Shine seeks reporting-time pay for on-call shifts that were canceled in early 2013, within the period covered by the *Morales* settlement agreement. Because reporting-time pay is a form of wages, a claim for reporting-time pay could have been raised in the *Morales* action. (See *Murphy v. Kenneth Cole Productions, Inc.* (2007) 40 Cal.4th 1094, 1111–1112 [reporting-time pay, like split-shift and overtime pay, is a form of wages even though it serves a dual purpose of shaping employer behavior].) The fact that no claim for reporting-time pay was alleged in *Morales* does not alter our determination that the same primary right, to seek payment of wages due, was involved in both *Morales* and this case. (See *Boeken v. Phillip Morris USA, Inc.* (2010) 48 Cal.4th 788, 798–799.)

Mr. Shine argues the present claims are not covered by the previous settlement agreement and release because there was no "bona fide dispute" in *Morales* over reporting-time pay. As we explain, his contention is based on a misunderstanding of subdivision (a) of section 206.5, which provides: "An employer shall not require the execution of a release of a claim or right on account of wages due, or to become due, or made as an advance on wages to be earned, unless payment of those wages has been made. A release required or executed in violation of the provisions of this section shall be null and void as between the employer and the employee. Violation of this section by the employer is a misdemeanor."

Wages are considered "due" within the meaning of section 206 either when the employer concedes they are due or, when following investigation and hearing, the Labor Commissioner rules they must be paid. (§ 206, subd. (b).) Reading this provision in conjunction with section 206.5, the Labor Code requires payment by the employer of all wages considered "due" within the meaning of section 206 before a release may be obtained from an employee in a wage and hour dispute. (*Watkins v. Wachovia Corp.* (2009) 172 Cal.App.4th 1576, 1587; *Chindarah v. Pick Up Stix, Inc.* (2009) 171 Cal.App.4th 796, 801–803.)

In this case it is undisputed that there was a bona fide disagreement on the right to reporting-time pay. Williams-Sonoma denies that reporting-time pay is owed when on-call shifts are canceled by the employer. Because the right to reporting-time pay is in dispute, reporting-time pay was not "due" within the meaning of section 206 when the *Morales* settlement agreement was signed. Accordingly, the limitation imposed by section 206.5 does not apply to invalidate the release.

There is no applicable statute that precludes the release of wage claims that could have been raised in the previous action. (See *Villacres*, *supra*, 189 Cal.App.4th at pp. 584–585 [citing numerous cases in which subsequent actions for additional wages were barred under doctrine of res judicata].) "'[A] judgment pursuant to a class settlement can bar [subsequent] claims based on the allegations underlying the claims in the settled class action. This is true even though the precluded claim *was not presented,* and could not have been presented, in the class action itself.' (*In re Prudential Ins. Co. of America* (3d Cir. 2001) 261 F.3d 355, 366, italics added; accord, *In re General American Life Ins. Company Sales Prac. Lit*. (8th Cir. 2004) 357 F.3d 800, 804–805.)" (*Id*. at pp. 586–587.)

Mr. Shine's reliance on *Consumer Advocacy Group, Inc. v. ExxonMobil Corp*. (2008) 168 Cal.App.4th 675 is misplaced. That case was preceded by a previous action between the same parties (the "CBE" action). (*Id*. at p. 689.) The settlement agreement in the CBE action contained a provision that expressly released all claims that could have been raised arising out of any alleged discharge of or exposure to two specific chemicals, benzene and toluene. (*Id*. at p. 688.) Lead, the chemical at issue in the subsequent *Consumer Advocacy* action, was not mentioned in the previous CBE settlement agreement, either by name or more generally as a "gasoline constituent." (*Ibid*.) Accordingly, *Consumer Advocacy* held that the release in the CBE action did not bar a subsequent action concerning discharge of or exposure to lead. (*Id*. at p. 689.) In this case, however, paragraph A.6 of the *Morales* settlement agreement broadly releases any claim that could have been brought under the enumerated provisions, which necessarily includes Wage Order 7-2001.

9

## II

Mr. Shine alternatively argues the *Morales* settlement agreement includes a waiver by Williams-Sonoma of the right to assert a res judicata defense to wage claims which, like the present claim for reporting-time pay, are dependent on facts not mentioned in the *Morales* complaint. We do not agree.

The release in the *Morales* settlement agreement is comparable to the "standard general release" discussed in the *Villacres* case. (*Villacres*, *supra*, 189 Cal.App.4th at p. 587.) The release at issue in *Villacres* was entered in a previous case, *Augustus v. American Commercial Security Services*, *Inc.* (Super. Ct. L.A. County, 2006, No. BC347914) (*Augustus*)). (*Villacres*, at p. 570.) The *Augustus* release stated that the "'Class Members hereby . . . fully release . . . the [defendant employer] from any and all claims, debts, liabilities, demands, obligations, . . . damages, action or causes of action . . . which have been or could have been asserted against the [employer] arising out of or related to all claims for wages, overtime pay, pay for all time allegedly worked but not compensated, and all other claims of any kind for wages, penalties, interests, costs and attorneys' fees arising from the alleged violation of any provision of . . . California law and/or Federal law which [were] or could have been raised as part of the Plaintiffs' claims.' [Italics omitted.]" (*Id.* at pp. 585–586.)

In enforcing the *Augustus* release, the court in *Villacres* explained that the term "all claims" as used in the *Augustus* settlement agreement "includes 'claims that are not expressly enumerated in the release.' [Citation.]" (*Villacres*, *supra*, 189 Cal.App.4th at p. 587.) The *Villacres* court held that the *Augustus* settlement agreement released the plaintiffs' "'PAGA

10

claims' without mentioning the PAGA by name," and it was "immaterial that *Augustus* did not include a PAGA cause of action. [Citation.] Nor does it matter that none of the settlement proceeds in *Augustus* were allocated to PAGA claims. [Citation.] [¶] Reduced to its essence, the *Augustus* settlement agreement released 'all claims . . . of any kind for . . . penalties . . . arising from the alleged violation of any provision of common law, California law and/or Federal law which [were] or could have been raised as part of the Plaintiffs' claims.' This provision constitutes a standard general release, barring any claims based on conduct occurring before its effective date. [Italics omitted.]" (*Ibid.*) In reaching this conclusion, the *Villacres* court reasoned that a "'judgment pursuant to a class settlement can bar [subsequent] claims based on the allegations underlying the claims in the settled class action. This is true even though the precluded claim was not presented, and could not have been presented, in the class action itself.' [Citations.] [Italics omitted.]" (*Id.* at pp. 586–587.)

We agree with *Villacres, supra,* 189 Cal.App.4th at p. 589 that "'the release of "all claims and causes of action" must be given a comprehensive scope. [¶] If courts did not follow this rule, "it [would be] virtually impossible to create a general release that . . . actually achieve[d] its literal purpose" . . . , and language releasing all claims would be inherently misleading, causing unfair surprise to parties that offer payment on the reasonable expectation that all claims are settled, only later to face continuing litigation. . . . Moreover, if courts did not enforce general releases, an employer . . . seeking a comprehensive settlement, would have to struggle to enumerate all claims the employee might plan to allege. The employer would never be able

11

to know for sure that it had thought of every claim, and therefore it would never be able to put a definitive end to the matter. Employers would then be disinclined to enter into settlements, because certainty as to the full extent of liability is one factor that motivates employers to choose settlement over litigation.' [Citation, italics omitted.]"  (*Ibid*.)

Like the *Augustus* release, the *Bonilla* settlement agreement released "*all claims,* demands, rights, liabilities and causes of action *that were or could have been asserted* (whether in tort, contract or otherwise) *for violation of the Fair Labor Standards Act, the California Labor Code, the California Business and Professions Code, the Private Attorneys General Act ('PAGA'), the applicable Industrial Welfare Commission Orders or any similar state or federal law, whether for economic damages, non-economic damages, liquidated damages, punitive damages, restitution, penalties, other monies, or other relief based on any facts, transactions, events, policies, occurrences, acts, disclosures, statements, omissions or failures to act pled in the Complaint*, which are or could be the basis of claims that Defendant failed to pay wages or overtime, failed to provide meal or rest breaks or compensation in lieu thereof, failed to provide timely wages and final paychecks, committed record-keeping violations, provided noncompliant wage statements, failed to reimburse for business expenses, or engaged in unfair business practices at any time on or before the date of Preliminary Approval."  (Italics added.)

As with any contract, the language of a settlement agreement must be viewed in its entirety, and, if possible, every provision must be given effect.  (*City of El Cajon v. El Cajon Police Officers' Assn*. (1996) 49 Cal.App.4th 64, 71.)  Reading the terms of the *Morales* settlement agreement together as whole,

and attempting to give effect to every provision, we conclude the first clause of the release provided a general release of all claims that were or could have been asserted in the previous action between the same parties for payment of wages due under the enumerated provisions. We do not read the subsequent phrase, "pled in the complaint," as modifying the first clause of the release. By construing the release in this manner, we give effect to the entire agreement and avoid rendering the general release contained in the first clause of the provision meaningless. (*Ibid.* [every provision in instrument should be given effect if possible]; *Super 7 Motel Associates v. Wang* (1993) 16 Cal.App.4th 541, 546 [same].)

The parties rely on competing rules for interpretation of a contract: Williams-Sonoma relies on the last antecedent rule, which is "a rule of statutory and contractual interpretation requiring that prepositional phrases be read to modify the preceding term or phrase." (*People ex rel. Lockyer v. R.J. Reynolds Tobacco Co.* (2003) 107 Cal.App.4th 516, 529.) Mr. Shine relies on the rule of natural construction, which provides an exception to the last antecedent rule: "[W]hen several words are followed by a clause that applies as much to the first and other words as to the last, ""the natural construction of the language demands that the clause be read as applicable to all.""" [Citation.]" (*Renee J. v. Superior Court* (2001) 26 Cal.4th 735, 743.)

Williams-Sonoma argues that under the last antecedent rule, the phrase "pled in the Complaint" should be read to modify only the phrase that immediately precedes it, "or other relief." Mr. Shine argues that under the rule of natural construction, the

13

phrase "pled in the Complaint" imposes a natural limitation on the scope of the entire release.

We conclude the last antecedent rule provides the more accurate and natural construction of the release. The interpretation advanced by Mr. Shine contradicts the plain language of the agreement and fails to give effect to the general release contained in the opening clause of the paragraph. His assertion that application of the last antecedent rule would erroneously release even *non*-wage and hour claims is incorrect. The final passage limits the release to claims related to a wage and hour action. Moreover, in construing the agreement, it is assumed that the parties incorporated all applicable laws including res judicata and collateral estoppel. (See *Bodle v. Bodle* (1978) 76 Cal.App.3d 758, 764.) Because collateral estoppel applies only to claims that are related by subject matter and could have been pleaded in the first action, there is no danger that application of the last antecedent rule would release claims completely unrelated to employment claims.

Mr. Shine also relies on the rule applicable to contract actions where the instrument is attached as an exhibit to the complaint. The rule in such cases is that a general demurrer "admits not only the contents of the instrument but also any pleaded meaning to which the instrument is reasonably susceptible. [Citation.]" (*Aragon-Haas v. Family Security Ins. Services, Inc.* (1991) 231 Cal.App.3d 232, 239.) Assuming this rule applies to the present situation, it does not compel a different result. As previously discussed, the *Morales* settlement agreement is not reasonably susceptible to the meaning ascribed by Mr. Shine, and his interpretation is not dispositive. (See *George v. Automobile Club of Southern California* (2011) 201

14

Cal.App.4th 1112, 1128–1129 [demurrer properly sustained without leave to amend because insurance contract not reasonably susceptible to meaning alleged in complaint]; *Winet v. Price* (1992) 4 Cal.App.4th 1159, 1166–1168 [threshold determination of ambiguity always subject to de novo review, and based on independent review of disputed phrase, appellate court found provisions of agreement to be "as complete, explicit and non-ambiguous as a general release can be"].)

Mr. Shine argues that at minimum, because the release is ambiguous as to whether Williams-Sonoma waived the res judicata defense, he is entitled to discovery on the intention of the parties.  However, the release is not ambiguous, and discovery is not a valid basis for reversal.  Extrinsic evidence is not admissible to provide a meaning to which an instrument is not reasonably susceptible, and the language of the contract governs its interpretation when it is clear and explicit and does not involve an absurdity.  (*G & W Warren's, Inc. v. Dabney* (2017) 11 Cal.App.5th 565, 576.)

## III

We conclude the demurrer was properly sustained without leave to amend on grounds of res judicata.  Because we conclude the release is clear and unambiguous, further amendment of the complaint would be pointless.  We do not reach the other issues briefed by the parties, and express no opinion as to the merits of the complaint or Mr. Shine's standing to pursue this action.

15

## DISPOSITION

The judgment (order of dismissal) is affirmed. Williams-Sonoma is entitled to its costs on appeal.

CERTIFIED FOR PUBLICATION


EPSTEIN, P. J.

We concur:


WILLHITE, J.


MANELLA, J.

16