Filed 4/26/22  Coronel v. Pinnacle Agriculture Distribution, Inc. CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| JUVENAL CORONEL, | |
| Plaintiff and Appellant, | G060945 |
| v. | (Super. Ct. No. 18CV004287) |
| PINNACLE AGRICULTURE DISTRIBUTION, INC., | O P I N I O N |
| Defendant and Respondent. | |

Appeal from a judgment of the Superior Court of Monterey County, Lydia Villarreal, Judge.  Affirmed.

Diversity Law Group, Larry W. Lee, Max W. Gavron; Fenton & Keller, Christopher E. Panetta, Sharilyn R. Payne and Elizabeth R. Leitzinger for Plaintiff and Appellant.

Perkins Coie, Sopen Shah, Jon G. Daryanani and Jill L. Ripke for Defendant and Respondent.

\*          \*          \*

Plaintiff Juvenal Coronel (plaintiff) filed this lawsuit against his former employer, defendant Pinnacle Agriculture Distribution, Inc.  He alleged representative claims under the Private Attorneys General Act (PAGA; Lab. Code, § 2698 et seq.)[1] and class claims based on various wage and hour violations.  A few months after he filed his lawsuit, defendant settled a similar class action and PAGA lawsuit filed by nonparty Damian Reyes (the *Reyes* action).  This settlement was approved and judgment was entered in the *Reyes* action.  Defendant then filed a motion for judgment on the pleadings in this action, arguing plaintiff's claims were barred by the settlement in the *Reyes* action. The trial court agreed, granted the motion, and entered judgment in favor of defendant. Plaintiff now appeals.  While he concedes some of his claims overlap with the *Reyes* action, he maintains his lawsuit asserted several unique causes of action that the trial court incorrectly found were barred by claim preclusion.  We disagree.  The claims asserted in this action all involve the same primary rights as those in the *Reyes* action, and, consequently, they are barred by claim preclusion.  As such, we affirm the judgment.

I

FACTS AND PROCEDURAL HISTORY

*A.  Plaintiff's Complaint*

This is a class action and PAGA lawsuit.  Plaintiff initially filed suit against defendant in November 2018, then filed the operative first amended complaint (FAC) in May 2019.  The FAC alleged claims for (1) failure to provide proper meal breaks (§§ 226.7, 512), (2) failure to provide proper rest breaks (§ 226.7), (3) failure to pay minimum wage (§§ 1194, 1197, 1197.1), (4) failure to pay accrued vacation time upon separation (§ 227.3), (5) failure to provide proper wage statements (§ 226, subd. (a)), (6) violations of Business and Professions Code section 17200 (UCL), and (7) PAGA

---

[1] All further undesignated statutory references are to the Labor Code.

penalties for all aggrieved employees based on the aforementioned alleged Labor Code violations. The alleged class included "[a]ll current and former non-exempt employees who worked for Defendant[] in the State of California at any time from November 8, 2014, through the present . . . ."

At issue in this appeal are the third, fourth, and seventh causes of action. The third cause of action was based on defendant's alleged failure "to pay for time spent by employees undergoing mandatory drug testing." Plaintiff sought recovery of these unpaid wages under sections 1194 and 1197. He also alleged that defendant had failed to pay these unpaid wages to employees at separation, as required under sections 201 and 202, and sought penalties under section 203.[2]

The fourth cause of action was based on allegations that "Defendant[] did not pay all vested vacation wages to employees upon termination. Specifically, employees forfeited accrued vacation time and paid time off." As with the third cause of action, plaintiff also sought penalties under section 203 based on defendant's alleged failure to pay these unpaid wages upon employee separation.

As to the PAGA claim, two portions are relevant here. First, there was a derivative portion seeking PAGA penalties based on the Labor Code violations alleged in the third and fourth causes of action. Second, plaintiff also sought PAGA penalties based on defendant's alleged failure to keep accurate time records in violation of section 1174 subdivision (d), and Industrial Welfare Commission's (IWC) wage order 14-2001, section 7. (Cal. Code Reg., tit. 8, § 11140, subd. (7).)

---

[2] Generally, sections 201 and 202 require an employer to pay an employee all wages earned and unpaid at the time of separation. (§§ 201, 202.) If an employer willfully fails to do so, it must pay the employee "a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced; but the wages shall not continue for more than 30 days." (§ 203, subd. (a).)

3

*B. The* Reyes *Action and Settlement*

A year and a half before plaintiff filed this action, nonparty Damian Reyes (Reyes) filed a similar class action and PAGA lawsuit against defendant in March 2017. The *Reyes* action involved claims for (1) failure to provide proper meal breaks (§§ 226.7, 512); (2) failure to provide proper rest breaks (§§ 226.7, 512); (3) failure to provide one day's rest per workweek (§§ 512, 552); (4) failure to provide proper wage statements (§ 226, subd. (a)); (5) failure to pay wages upon separation (§§ 201-203); (6) violations of the UCL; and (7) PAGA penalties for the aforementioned alleged Labor Code violations.

The *Reyes* action settled in May 2019. Defendant agreed to pay the class $350,000, with $10,000 of this amount allocated to PAGA penalties.[3] The same trial judge that presided over this action also presided over the settlement approval process in *Reyes* and granted final approval of the settlement (the *Reyes* settlement) in October 2019. There is no dispute plaintiff was part of the class covered by the *Reyes* settlement, which included "any current or former hourly non-exempt employees employed by Defendant . . . in California during the Class Period." The Class Period ran from either March 15, 2013 or September 1, 2014 (depending on the specific facility where the class member worked) to the date of preliminary approval of the settlement, which was granted in June 2019.

In exchange for a portion of the settlement proceeds, class members that participated in the *Reyes* settlement released "any and all claims, known or unknown, which were alleged or could have been alleged based on the facts alleged in the operative Complaint both on behalf of the named Class Representative [i.e., Reyes] and on behalf of the Class Members, including but not limited to claims for (1) Failure to Provide Meal

_____

[3] Unlike class payments, PAGA penalties are split between the Labor and Workforce Development Agency (LWDA) and aggrieved employees, with 75 percent going to the former and 25 percent going to the latter. (§ 2699, subd. (i).)

4

Breaks and Meal Break Premium Wages in Violation of Labor Code Sections 512 and 226.7; (2) Failure to Provide Rest Breaks and Rest Break Premium Wages in Violation of Labor Code Section 226.7[;] (3) Failure to Provide One Day's Rest in Seven in Violation of Labor Code Sections 551 and 552; (4) Failure to Provide Accurate Wage Statements in Violation of Labor Code Section 226; (5) Failure to Timely Pay Final Wages in Violation of Labor Code Sections 201, 202, and 203; (6) Violation of Business and Professions Code Sections 17200, *et seq.*; (7) Civil Penalties Pursuant to [PAGA], Labor Code Section 2698, *et seq.*"

If class members were unhappy with the terms of the settlement, they could (1) opt out and preserve their claims by submitting a form to the settlement administrator, or (2) file an objection explaining why the settlement should not be approved (though they would be bound by the settlement if their objection was overruled). Class members that did not opt out would be bound by the settlement's release. The notice of settlement sent to class members stated, "[i]f you do not submit a timely request to be excluded from the settlement, you will be giving up your right to bring a legal claim against the [defendant] for the same claims, or similar claims, as those encompassed by this lawsuit. Specifically, the parties' Settlement Agreement states that you will release all Released Parties for the Released Claims accrued during the Claims Period." This text was followed by the release language set forth above, as well as the definitions for "Released Persons" and "Class Period." It is uncontested that plaintiff was provided notice of the settlement and did not opt out.

Judgment was entered in the *Reyes* action on December 12, 2019. The final judgment provided that "the claims of each and every Class Member who did not timely and validly exclude themselves from [the] settlement . . . released in the Release of Claims are and shall be deemed to be conclusively released as against the Released Persons. All Class Members who did not timely and validly exclude themselves from settlement . . . are hereby forever barred and enjoined from prosecuting the Claims

5

released in the Release of Claims against the Released Persons." There was no appeal of the judgment, and it became final in March 2020.

*C. Motion for Judgment on the Pleadings in this Action*

After final approval of the *Reyes* settlement was granted but prior to the entry of judgment, defendant moved for judgment on the pleadings in this action. Defendant argued plaintiff's claims in the FAC were either barred by the release or by claim preclusion.[4] In making its ruling, the court divided plaintiff's claims into two categories. It granted defendant's motion as to the first and second causes of action (meal and rest breaks), as well as the derivative portions of the sixth (UCL) and seventh causes of action (PAGA), finding these claims were directly released by the *Reyes* settlement. As to the third, fourth, and fifth causes of action and the derivative portions of the sixth and seventh causes of action, the court believed they were barred by claim preclusion. But it thought the application of claim preclusion was premature since no final judgment had been entered in the *Reyes* action. As such, the court denied the motion as to these claims without prejudice to defendant renewing the motion once there was a final judgment in the *Reyes* action.

Once the judgment in the *Reyes* action became final, defendant renewed its motion for judgment on the pleadings as to the remaining claims. Following oral argument, the court took the matter under submission then issued a written order granting the motion. The order does not explain the basis of the ruling, but given the court's statements at oral argument, it appears to be based on claim preclusion. Since the renewed motion completely disposed of plaintiff's claims, the trial court entered judgment against him in May 2020.

---

[4] Defendant referred to the doctrine as "res judicata" in its motion. Our Supreme Court has clarified this doctrine should be referred to as "claim preclusion." (*Samara v. Matar* (2018) 5 Cal.5th 322, 326 (*Samara*).)

6

Plaintiff now appeals, arguing the court incorrectly granted the renewed motion as to the third and fourth causes of action and a portion of his PAGA claim. He maintains these claims were based on unique allegations that were not and could not be released by the *Reyes* settlement. These specific allegations include defendant's failure to (1) compensate employees for time spent undergoing mandatory drug testing (third cause of action and derivative portion of PAGA claim); (2) pay employees for accrued but unused vacation time (fourth cause of action and derivative portion of PAGA claim); and (3) maintain accurate time records for meal breaks (standalone portion of PAGA claim). The trial court ruled correctly, and we affirm the judgment.[5]

Before we begin our analysis, we note that plaintiff filed a request for judicial notice of the written notice he gave the California Labor and Workforce Development Agency (LWDA) of his PAGA claims. This PAGA notice is immaterial to our analysis, so we deny plaintiff's request for judicial notice.

II

DISCUSSION

A. *Applicable Law*

"A motion for judgment on the pleadings is equivalent to a demurrer and is governed by the same de novo standard of review. [Citation.] All properly pleaded, material facts are deemed true, but not contentions, deductions, or conclusions of fact or law." (*Adams v. Bank of America, N.A.* (2020) 51 Cal.App.5th 666, 670.)

In the context of a judgment entered pursuant to a class action or PAGA settlement, courts apply the law of preclusion to determine if subsequent actions are

---

[5] It does not appear from plaintiff's briefs that he appeals the trial court's ruling on the fifth cause of action (failure to provide proper wage statements). To the extent he does, we find this cause of action is barred by claim preclusion for the same reasons discussed in Section II.C., *infra*.

barred. (See, e.g., *Robinson v. Southern Counties Oil Co.* (2020) 53 Cal.App.5th 476, 481-483; *Shine v. Williams-Sonoma, Inc.* (2018) 23 Cal.App.5th 1070, 1076-1077 (*Shine*); *Villacres v. ABM Industries Inc.* (2010) 189 Cal.App.4th 562, 575-578 (*Villacres*).) "The law of preclusion helps to ensure that a dispute resolved in one case is not relitigated in a later case." (*Samara*, *supra*, 5 Cal.5th at p. 326.) Preclusion includes claim preclusion and issue preclusion, which each have different requirements and effects. (*Id*. at pp. 326-327.)

At issue here is claim preclusion, which "prevents relitigation of entire causes of action." (*Samara*, *supra*, 5 Cal.5th at pp. 326-327.) "[A]ll claims based on the same cause of action must be decided in a single suit; if not brought initially, they may not be raised at a later date. '"[Claim preclusion] precludes piecemeal litigation by splitting a single cause of action or relitigation of the same cause of action on a different legal theory or for different relief."' [Citation.] A predictable doctrine of [claim preclusion] benefits both the parties and the courts because it 'seeks to curtail multiple litigation causing vexation and expense to the parties and wasted effort and expense in judicial administration.'" (*Mycogen Corp. v. Monsanto Co.* (2002) 28 Cal.4th 888, 897 (*Mycogen*), italics omitted.) Claim preclusion "applies only when 'a second suit involves (1) the same cause of action (2) between the same parties [or their privies] (3) after a final judgment on the merits in the first suit.'" (*Samara*, *supra*, 5 Cal.5th at pp. 326-327.)

Here, plaintiff only contests the first element, arguing his claims involve different causes of action than those alleged by Reyes. "To determine whether two proceedings involve identical causes of action for purposes of claim preclusion, California courts have 'consistently applied the "primary rights" theory.'" (*Boeken v. Philip Morris USA, Inc*. (2010) 48 Cal.4th 788, 797-798.) "'[T]he primary right is simply the plaintiff's right to be free from the particular injury suffered. [Citation.] It must therefore be distinguished from the *legal theory* on which liability for that injury is premised: "Even where there are multiple legal theories upon which recovery might be

8

predicated, one injury gives rise to only one claim for relief." [Citation.] The primary right must also be distinguished from the *remedy* sought: "The violation of one primary right constitutes a single cause of action, though it may entitle the injured party to many forms of relief, and the relief is not to be confounded with the cause of action, one not being determinative of the other.""" (*Mycogen*, *supra*, 28 Cal.4th at p. 904.) "[U]nder the primary rights theory, the determinative factor is the harm suffered. When two actions involving the same parties seek compensation for the same harm, they generally involve the same primary right." (*Boeken*, at p. 798.)

Significantly, claim preclusion also "bars the relitigation not only of claims that were conclusively determined in the first action, but also matter that was within the scope of the action, related to the subject matter, and relevant to the issues so that it *could have been raised*. [Citations.] 'A party cannot by negligence or design withhold issues and litigate them in consecutive actions. Hence the rule is that the prior judgment [precludes] matters which were raised or could have been raised, on matters litigated or litigable.'" (*Burdette v. Carrier Corp.* (2008) 158 Cal.App.4th 1668, 1674-1675, italics added.) This principle applies within the context of a class action settlement. "'[A] judgment pursuant to a class settlement can bar [subsequent] claims based on the allegations underlying the claims in the settled class action. This is true even though the precluded claim *was not presented*, and *could not have been presented*, in the class action itself.'" (*Villacres*, *supra*, 189 Cal.App.4th at pp. 586-587.)

## B. *The Third and Fourth Causes of Action and Derivative PAGA Claims*

As explained below, the third and fourth causes of action and their derivative PAGA claims involve the same primary rights as the claims asserted in the *Reyes* action and are barred by claim preclusion.

We start by reviewing the *Reyes* action, which sought recovery of unpaid wages. In particular, Reyes generally alleged defendant "failed to pay [Reyes] and other

9

hourly non-exempt employees with *all wages* . . . during their employment and never paid these amounts after [Reyes] and other hourly non-exempt employees separated employment with Defendants." (Italics added.) Likewise, Reyes' fifth cause of action asserted the class was "entitled upon separation of employment to timely payment of *all wages earned and unpaid* prior to separation of employment. . . . [¶] . . . Defendant[] failed to pay [Reyes] and the [alleged class] with *all wages* as alleged above during their employment and never paid these amounts after the employees separated from Defendants." (Italics added.) Reyes' fifth cause of action sought to recover these unpaid wages on behalf of the class under sections 201, 202 and 203.

Here, plaintiff's fourth cause of action also sought recovery of unpaid wages, specifically, unpaid vacation wages that defendant allegedly failed to pay employees upon termination in violation of section 227.3. This cause of action is entirely subsumed by Reyes' fifth cause of action. As set forth above, Reyes sought recovery of *all wages* earned and unpaid at termination. The reference to "all wages" in the *Reyes* complaint necessarily includes unpaid vacation wages. (See § 227.3 [characterizing unpaid vacation "as wages"]; *Rhea v. General Atomics* (2014) 227 Cal.App.4th 1560, 1570 [same].) In other words, plaintiff's fourth cause of action seeks redress for the same harm as Reyes' fifth cause of action – unpaid wages – but under a different legal theory. As such, it is precluded by the *Reyes* judgment. (See *Mycogen*, *supra*, 28 Cal.4th at p. 904.)

Plaintiff's third cause of action sought recovery for defendant's alleged failure to pay minimum wages. Plaintiff asserted defendant violated sections 1194 and

10

1197 by failing to pay employees for time spent undergoing mandatory drug testing.[6] This cause of action is broader than Reyes' fifth cause of action described above. The latter only sought unpaid wages for employees that were separated from employment. In comparison, plaintiff's third cause of action covered separated and current employees. However, this distinction does not save this claim. Rather, we look at the injury forming the basis of each claim. (*Mycogen*, *supra*, 28 Cal.4th at p. 904.) In doing so, we again conclude both claims involve the same injury – defendant's failure to pay wages owed – but seek recovery under different legal theories. While the *Reyes* action sought unpaid wages under sections 201 and 202, plaintiff pursued them under sections 1194 and 1197. Since the claims involve the same harm, plaintiff's third cause of action is precluded.

Similarly, we find plaintiff's PAGA claims based on the above Labor Code violations are also barred by claim preclusion. Unlike the third and fourth causes of action, these derivative PAGA claims did not seek compensation for unpaid work. Instead, "a PAGA action is a dispute between an employer and the state [LWDA]." (*Iskanian v. CLS Transportation Los Angeles, LLC* (2014) 59 Cal.4th 348, 384.) PAGA penalties are intended "'to punish and deter employer practices that violate the rights of numerous employees under the Labor Code.'" (*Id*. at pp. 383-384.) "Relief under PAGA is designed primarily to benefit the general public, not the party bringing the action." (*Kim v. Reins International California, Inc*. (2020) 9 Cal.5th 73, 81.)

Accordingly, this portion of plaintiff's PAGA claim sought to penalize defendant for harms caused to the public due to its failure to pay wages. The *Reyes* action, however, already vindicated the same harm. Reyes' PAGA claim sought

---

[6] Section 1194 allows "any employee receiving less than the legal minimum wage . . . applicable to the employee . . . to recover in a civil action the unpaid balance of the full amount of this minimum wage." Similarly, section 1197 provides that "[t]he minimum wage for employees fixed by the commission or by any applicable state or local law, is the minimum wage to be paid to employees, and the payment of a lower wage than the minimum so fixed is unlawful."

penalties for defendant's failure to pay aggrieved employees "all unpaid wages" upon separation from employment. Among other things, Reyes' PAGA claim alleged defendant "failed to pay . . . hourly non-exempt employees with all wages . . . during their employment and never paid these amounts after [they] separated employment with Defendant[]" in violation of sections 201 and 202.

Though Reyes' PAGA claim did not seek penalties for the specific Labor Code sections at issue here (§§ 227.3, 1194, 1197, 1197.1), this is immaterial. Claim preclusion requires that we look at the injury underlying the claims, not the remedy sought. At their core, the relevant claims in both actions sought penalties on behalf of the LWDA for defendant's failure to pay wages owed. They involve the same injury but seek PAGA penalties under different Labor Code sections. This is insufficient to avoid preclusion. (See *Mycogen*, *supra*, 28 Cal.4th at p. 904.) Thus, plaintiff's PAGA claims based on unpaid vacation and uncompensated drug testing are precluded.

*C. The Remaining PAGA Claim*

Next, we address the portion of plaintiff's PAGA claim based on defendant's alleged failure to keep accurate records of meal breaks. This claim is based on plaintiff's assertion that defendant "fail[ed] to maintain records of when . . . employees clocked in and out for meal periods" in violation of section 1174, subdivision (d) and IWC's wage order 14-2001, section 7 (Cal. Code Regs., tit. 8, § 11140, subd. (7)(A)(3)).

Generally, the purpose behind an employer's duty to maintain accurate records of meal breaks is to ensure that employees are provided compliant meal periods and compensated when they are not. (See *Donohue v. AMN Services, LLC* (2021) 11 Cal.5th 58, 74-76.) Indeed, along with his PAGA claim, plaintiff asserted meal break claims against defendant, alleging it "required Plaintiff and Class Members to be 'on call' during their meal breaks" and "work through their meal breaks." Plaintiff further alleged

12

that first meal breaks were often untimely, second meal breaks were not provided, and defendant did not provide employees with premium pay under section 226.7 for noncompliant meal periods.

The record-keeping portion of plaintiff's PAGA claim is intertwined with these meal period claims. In general, the harm associated with defendant's failure to accurately record meal periods was that employees were given noncompliant meal periods and deprived of premium pay under section 226.7. Plaintiff's PAGA claim sought to vindicate that harm on behalf of the public. (See *Iskanian v. CLS Transportation Los Angeles, LLC*, *supra*, 59 Cal.4th at p. 384.) But the *Reyes* action already brought a PAGA claim based on this injury. It expressly sought PAGA penalties based on defendant's failure to provide proper meal breaks and premium pay.

Further, the *Reyes* action also sought PAGA penalties for defendant's failure to provide accurate wage statements under section 226. Among other things, defendant's wage statements allegedly failed to reflect premium pay for noncompliant meal breaks. Section 226 imposes a similar record-based duty on employers. It "obliges employers to provide their employees with records of their earnings and deductions, and imposes penalties upon employers who knowingly and intentionally fail to supply the records." (*Naranjo v. Spectrum Security Services, Inc.* (2009) 172 Cal.App.4th 654, 668-669.) Like the duty to maintain accurate records at issue here, the duty to provide accurate wage statements is also "intended to ensure workers are correctly and adequately compensated for their work." (*Ward v. United Airlines, Inc.* (2020) 9 Cal.5th 732, 752-753.) Thus, to the extent there is a unique harm attached to the violation of these record-based duties that is separate from the harm caused by inadequate compensation, it was already addressed by Reyes' wage-statement PAGA claim.

13

*D. Remaining Arguments*

We are not persuaded by any of plaintiff's remaining arguments. First, plaintiff contends that even if the elements of claim preclusion were met, the trial court should have exercised its discretion not to apply it. He cites case law stating that "[e]ven if the[] threshold requirements are established, res judicata will not be applied 'if injustice would result or if the public interest requires that relitigation not be foreclosed.'" (*Dunkin v. Boskey* (2000) 82 Cal.App.4th 171, 181.) But we see no reason not to apply claim preclusion here. Plaintiff could have opted out of the class action portion of the settlement if he wanted to preserve his own claims, or he could have objected if he was unhappy with its terms. He did neither. As for the settled PAGA claims, "there is no mechanism for opting out of the judgment entered on the PAGA claim." (*Robinson v. Southern Counties Oil Co.* (2020) 53 Cal.App.5th 476, 482.) Still, plaintiff has not shown the application of claim preclusion is unjust here. Among other things, he has failed to show the amount of PAGA penalties allocated to the aggrieved employees in the *Reyes* settlement is unfair. (See *Williams v. Superior Court* (2017) 3 Cal.5th 531, 548-549 ["PAGA settlements are subject to trial court review and approval, ensuring that any negotiated resolution is fair to those affected"].)

Next, plaintiff contends the third (drug testing) and fourth (unpaid vacation) causes of action were unreleasable under sections 206 and 206.5. Together, these statutes "prohibit[] employers from coercing settlements by withholding wages concededly due. [W]ages are not considered 'due' and unreleasable under Labor Code section 206.5, unless they are required to be paid under Labor Code section 206." (*Watkins v. Wachovia Corp.*(2009) 172 Cal.App.4th 1576, 1586-1587.) As relevant here, wages must be paid under section 206 "when the employer concedes they are due." (*Shine*, *supra*, 23 Cal.App.5th at pp. 1077-1078.) But "[w]hen a bona fide dispute exists, the disputed amounts are not 'due,' and the bona fide dispute can be voluntarily settled with a release and a payment—even if the payment is for an amount less than the total wages

14

claimed by the employee." (*Watkins*, at pp. 1586-1587.) Plaintiff asserts the parties to the *Reyes* settlement did not have a bona fide dispute as to whether class members were entitled to unpaid vacation and drug testing time because those claims were not alleged in the *Reyes* complaint. Since these claims were not in dispute in the *Reyes* action, plaintiff maintains they were unreleasable. We disagree.

To start, the question before us is not whether the claims were unreleasable. Rather, it is whether these claims are barred by claim preclusion. The release in the *Reyes* settlement was approved by the trial court and memorialized in the resulting judgment, which we find precludes plaintiff's claims. To the extent plaintiff contends a release of these claims should not have been approved, "'"[a]n erroneous judgment is as conclusive as a correct one."'" (*Sabek, Inc. v. Engelhard Corp.* (1998) 65 Cal.App.4th 992, 999.) Plaintiff has not cited any case law showing sections 206 and 206.5 have any effect on claim preclusion analysis. Nor does he present any argument that they should, let alone explain how these sections can be harmonized with primary rights analysis. As such, he has failed to meet his burden to affirmatively demonstrate error.[7] (See *Morgan v. Imperial Irrigation Dist.* (2014) 223 Cal.App.4th 892, 913.)

Further, even if section 206.5 applied to claim preclusion analysis, we are still unpersuaded by plaintiff's argument. In arguing that there was no bona fide dispute, plaintiff incorrectly focuses on the allegations made in the *Reyes* action. But the proper inquiry is whether there was a bona fide dispute in *this action* that the wages at issue

---

[7] *Shine* involved a similar scenario where a prior wage and hour action had settled and the plaintiff in a subsequent lawsuit argued the release was invalid as to his claims under section 206.5. The court evaluated the argument and found section 206.5 did not apply because there was a bona fide dispute in the second lawsuit as to whether wages were owed. (*Shine*, *supra*, 23 Cal.App.5th at pp. 1077-1078.) But *Shine* addressed this argument without analyzing whether these statutes are even applicable when applying claim preclusion. "'[A] decision does not stand for a proposition not considered by the court.'" (*Agnew v. State Bd. of Equalization* (1999) 21 Cal.4th 310, 331-332.)

15

were owed. (*Shine*, *supra*, 23 Cal.App.5th at p. 1078.) It does not make sense to conclude the claims are unreleasable based on the allegations in the *Reyes* action alone. The absence of a dispute over this issue in the *Reyes* action does not inevitably mean that defendant has conceded these wages are owed, which would render them unreleasable. (*Ibid.*; *Watkins v. Wachovia Corp.*, *supra*, 172 Cal.App.4th at pp. 1586-1587.) Plaintiff has not attempted to show that no bona fide dispute exists in this case concerning the wages at issue. Thus, he has not met his burden to show error by the trial court. (*Starcevic v. Pentech Financial Services, Inc.* (2021) 66 Cal.App.5th 365, 374.)[8]

Finally, plaintiff makes an argument based on Reyes' PAGA notice to the LWDA, which is a prerequisite to commencing a PAGA action. (§ 2699.3, subd. (a).) Plaintiff asserts Reyes's PAGA notice did not include allegations relating to unpaid vacation and drug testing. Consequently, plaintiff contends Reyes did not exhaust his administrative remedies as to these PAGA claims and could not have asserted them in the *Reyes* action. But this argument incorrectly assumes Reyes could not settle a claim he could not bring. "'Even when the court does not have power to adjudicate a claim, it may still "approve release of that claim as a condition of settlement of [an] action [before it]."'" (*Villacres*, *supra*, 189 Cal.App.4th at p. 586; see, e.g., *Moniz v. Adecco USA, Inc.* (2021) 72 Cal.App.5th 56, 82-83 [finding court had authority to approve release of PAGA claims that were not listed in the PAGA notice because they involved the same primary right].)

Moreover, the question before us is not whether the lower court should have approved the settlement. Rather, it is whether plaintiff's claims are precluded by the

---

[8] We admonish plaintiff for his citation to *McPherson v. EF Intercultural Foundation, Inc.* (2020) 47 Cal.App.5th 243. *McPherson* was certified for partial publication, and, as plaintiff acknowledges, he cites the unpublished portion in his opening brief. This is a violation of California Rules of Court, rule 8.1115(a), which provides "an opinion of a California Court of Appeal . . . that is not certified for publication or ordered published must not be cited or relied on by a court or a party in any other action."

*Reyes* judgment. "'[A] judgment pursuant to a class settlement can bar [subsequent] claims based on the allegations underlying the claims in the settled class action. This is true even though the precluded claim *was not presented*, and *could not have been presented*, in the class action itself.'" (*Villacres*, *supra*, 189 Cal.App.4th at pp. 586-587.) While we recognize the *Reyes* settlement involved PAGA claims and class claims, plaintiff has not cited any authority for the proposition that the preclusive effect of a PAGA judgment is narrower than that of a class action judgment.

Plaintiff, in his opening brief, cites *Arias v. Superior Court* (2009) 46 Cal.4th 969, 987, for the proposition that "if nonparty employees [are] not given notice of [a PAGA] action, such nonparty employees [are] not . . . bound by the judgment." From this, he argues by analogy that when an employee fails to provide notice of PAGA claims to the LWDA, any resulting PAGA judgment is not binding on the State as to those claims. We are not persuaded by this argument. In the portion of *Arias* cited by plaintiff, the Supreme Court was discussing the collateral estoppel effect of a PAGA judgment. It clarified that for some Labor Code violations, a plaintiff may obtain civil penalties under PAGA as well as other remedies. The Court explained that if an employer prevails in a PAGA action, nonparty employees who were not given notice of the action "would not be bound by the judgment as to remedies *other than civil penalties*." (*Arias*, at pp. 986-987, italics added.) This statement is inapposite here. First, it discusses the effect of lack of notice on nonparty employees, not the effect of lack of notice to the LWDA. Second, this statement focuses on the effect of a PAGA judgment on remedies other than civil penalties. It is irrelevant to the situation we face, where the issue is whether Reyes' prior claim for PAGA penalties precludes plaintiff's claim for PAGA penalties in this lawsuit.

17

## III

## DISPOSITION

The judgment is affirmed.  Defendant is entitled to its costs on appeal.


MOORE, ACTING P. J.

WE CONCUR:


SANCHEZ, J.


MARKS, J.*


*Judge of the Orange County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.