Filed 7/12/22 (unmodified opinion attached)

**CERTIFIED FOR PARTIAL PUBLICATION**


IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE


| | |
|---|---|
| DAVE MEZA,<br><br>      Plaintiff and Appellant,<br><br>      v.<br><br>PACIFIC BELL TELEPHONE COMPANY,<br><br>      Defendant and Respondent. | B317119<br>(Kern County<br>Super. Ct.<br>No. BCV-15-101572)<br><br>ORDER MODIFYING OPINION AND DENYING REHEARING<br><br>[NO CHANGE IN JUDGMENT] |


THE COURT:

It is ordered that the opinion filed herein on June 17, 2022, be modified as follows:

1.     On page four, in the second sentence of the first full paragraph, insert the words "and rest periods" between "meal" and the following comma, so the language reads:

      failed to provide legally required meal and rest periods,

2.     Delete the sentence beginning on page four with "The 2011 guidelines" and ending on page five with "positive image of the company" and insert the following in its place:

The 2011 guidelines, for example, provided that technicians: were not to abandon their vehicles, were required to protect company property at all times, were not allowed to travel "out of route," were not allowed to sleep in their vehicles at any time, were not permitted to congregate their vehicle with other company vehicles during meal or rest periods, and were expected to conduct themselves in a manner to project a positive image of the company during meal and rest periods.

3. On page 23, in the first sentence of the first full paragraph, delete the words "existed requiring" and insert the word "required" in their place.

4. On page 23, in the first sentence of the first full paragraph, insert after the word "communication" and before the period the words "to argue that such a requirement was a condition of employment," so that the language reads:

communication to argue that such a requirement was a condition of employment.

5. On page 26, the first sentence of the second full paragraph, insert the letter "s" at the end of the word "statement."

6. On page 29, the third sentence in the first full paragraph, capitalize the letter "l" in "legislature."

There is no change in the judgment.

The petitions for rehearing are denied.

CERTIFIED FOR PARTIAL PUBLICATION.

_____

LIPNER, J.[*]                EDMON, P. J.                LAVIN, J.

---

[*] Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

**CERTIFIED FOR PARTIAL PUBLICATION\***


IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE


| | |
|---|---|
| DAVE MEZA, | B317119 |
| Plaintiff and Appellant, | (Kern County Super. Ct. No. BCV-15-101572) |
| v. | |
| PACIFIC BELL TELEPHONE COMPANY, | |
| Defendant and Respondent. | |


APPEAL from orders of the Superior Court of Kern County, Stephen D. Schuett, Judge. Dismissed in part, reversed in part with directions, and affirmed in part.

The Dion-Kindem Law Firm, Peter R. Dion-Kindem; The Blanchard Law Group and Lonnie C. Blanchard for Plaintiff and Appellant.

---

\* Under California Rules of Court, rule 8.1110, this opinion is certified for publication with the exception of sections I, II, and IV of the DISCUSSION section.

Paul Hastings, Raymond Bertrand, James de Haan; Mayor Brown, Shaeff │ Jaffe and Donald M. Falk for Defendant and Respondent.

O'Melveny & Myers, Adam Karr and Heather Welles for Chamber of Commerce of the United States of America and California Chamber of Commerce as Amici Curiae on behalf of Defendant and Respondent.

Morgan, Lewis & Bockius, Max C. Fischer and Aimee Mackay for California Employment Law Council and Employers Group as Amici Curiae on behalf of Defendant and Respondent

_____

Dave Meza filed this consolidated class action lawsuit against his former employer, Pacific Bell Telephone Company (Pacific Bell). Meza alleged Pacific Bell violated California law by failing to provide lawful meal and rest periods and failing to provide lawful itemized wage statements among other Labor Code violations.[1] Meza appeals four trial court orders: (1) an order denying class certification to five meal and rest period classes (the class certification order); (2) an order granting summary adjudication of Meza's claim relating to wage statements under section 226, subdivision (a)(9) (the wage statement order); (3) an order striking Meza's claim under section 226, subdivision (a)(6) (the order to strike); and (4) an order granting summary adjudication of Meza's claim under the Labor Code Private Attorneys General Act of 2004 (PAGA) (§ 2698 et seq.) (the PAGA order).

We first consider whether each order is appealable. We conclude that Meza's appeal of the order to strike must be

_____

[1] All unspecified statutory references are to the Labor Code.

2

dismissed because Meza did not include it in his notice of appeal. We agree that the other orders are appealable under the death knell doctrine, which allows immediate appeals of certain interlocutory orders that resolve all representative claims but leave individual claims intact.

On the merits, we conclude that the trial court erred in refusing to certify the meal and rest period classes based on its conclusion that common issues do not predominate. On remand, however, the trial court must consider whether Meza is an adequate class representative, an issue it did not reach in its previous ruling.

We affirm the wage statement order and the PAGA order. In the published portion of the opinion, we explain that the trial court correctly granted summary adjudication of Meza's wage statement claim because Pacific Bell's wage statements do not violate the Labor Code. The trial court also correctly granted summary adjudication of the PAGA claim because it was barred by claim preclusion in light of the settlement and dismissal of a previous PAGA lawsuit.

## BACKGROUND

### A. *Meza's allegations*

Pacific Bell is a telecommunications corporation providing voice, video, data, internet and professional services to businesses, consumers, and government agencies. It has branches around the world, including in California. Pacific Bell hired Meza in January 2014 as a premises technician. Meza's duties included installing and repairing Pacific Bell's products and services including UVerse TV, telephones, and internet, transporting equipment and products to and from client locations, conducting pretrip and posttrip inspections of the

3

company van, cleaning and maintaining the company van's interior, and keeping the company van stocked. Though not alleged in the complaint, Pacific Bell employed Meza until October 2015.

In his operative second amended complaint, Meza alleged many Labor Code violations. Meza alleged that Pacific Bell failed to accurately document hours worked, failed to pay overtime wages, failed to provide legally required meal, failed to furnish accurate and complete wage statements, and failed to pay costs for the upkeep of uniforms.

Based on the allegations of Labor Code violations, Meza asserted a claim for unlawful business practices under Business and Professions Code section 17200 and a claim under PAGA. Meza also asserted a claim for wrongful termination. Meza sought compensatory and punitive damages, restitution, and penalties.

### B.    *The class certification order*

In December 2017, Meza moved to certify six statewide classes of premises technicians, five of which pertained to Meza's meal and rest period claims, and one of which pertained to his wage statement claim under section 226, subdivision (a)(9). In support of certification of the meal and rest break claims, Meza cited the "Premises Technician Guidelines" Pacific Bell adopted in 2011 and modified in 2013 and 2015. These written guidelines were provided to premises technicians, who were asked to sign an agreement stating that they had received the guidelines and agreed to comply with them. The agreement also provided that that failure to sign did not excuse compliance with the guidelines.

The 2011 guidelines, for example, provided that technicians, during meal or rest periods:  were not to abandon

their vehicles, were required to protect company property, were not allowed to travel "out of route", were not allowed to sleep in their vehicles, were not permitted to congregate with other company vehicles, and were required at all times to project a positive image of the company. Meza asserted that these guidelines substantially limited the activities of premises technicians during their meal and rest periods in violation of law, and that common issues predominated because the guidelines "uniformly apply to all Premise Technicians."

Pacific Bell opposed certification of the meal and rest period classes, arguing that its meal and rest period policies were facially compliant. Pacific Bell further argued that the 2011 guidelines on which Meza relied were not in effect during his employment, and that Meza testified that he had no recollection of receiving the operative guidelines. Pacific Bell further contended that the guidelines in effect during Meza's employment did not specifically limit how premise technicians spend their meal and rest periods. Pacific Bell argued that individualized issues predominated based on testimony from premise technicians and their managers indicating that technicians' understanding and managers' enforcement of the guidelines differed.

Pacific Bell also argued that Meza was an inadequate class representative because he "repeatedly lied in his deposition" and because of the circumstances of his discharge. Pacific Bell asserted that Meza was in a disciplinary meeting but halted the meeting with a purported medical emergency, and then, while on disability leave, applied and obtained a job with a competitor.

The trial court denied Meza's class certification motion for the meal and rest period classes, stating, "While the policies are

undisputed," "it appears that the actual management practices of [Pacific Bell]'s supervisors result in a diverse application of the company's Premises Technician Guidelines" that renders the claims "unsuitable for class action treatment." Because it did not certify these proposed classes, the trial court did not address the argument that Meza was an inadequate class representative. The trial court certified a class to pursue Meza's wage statement claim under section 226, subdivision (a)(9).

In 2018, Meza appealed the class certification order. The Fifth Appellate District dismissed this appeal in July 2020. (*Meza v. Pacific Bell Telephone Co.* (July 8, 2020, F077604) [nonpub. opn.].) It found that the order was not yet appealable under the death knell doctrine.

### C. *The wage statement order*

In June 2018, Meza and Pacific Bell filed cross-motions for summary adjudication of the sole class claim that had been certified: Meza's wage statement claim under section 226, subdivision (a)(9). This claim, described in more detail in our review of the trial court's order, involved Meza's allegation that certain entries in Pacific Bell's wage statements violated statutory requirements. The parties stipulated to the applicable facts. The trial court granted summary adjudication in favor of Pacific Bell, ruling that the wage statements complied with the law. With this ruling, no further class claims remained in the case.

### D. *The order to strike*

In April 2019, Meza filed his third amended complaint. Meza added a claim under section 226, subdivision (a)(6) alleging that Pacific Bell's wage statements failed to accurately show the inclusive dates of the pay period.

6

Pacific Bell filed a motion to strike these portions of the third amended complaint for failure to state a claim because Pacific Bell's pay statements listed the first and last day of the regular pay period. The court granted the motion to strike without leave to amend.

### E. *The PAGA order*

In February 2020, Pacific Bell moved for summary adjudication of Meza's PAGA claim, arguing that a final, approved settlement in a prior action, *Hudson v. Pacific Bell Telephone Co.* (Super. Ct. Sacramento County, 2016, No. 34-2016-00202203) (*Hudson*), barred Meza from pursuing his claim under the doctrines of res judicata and settlement and release. The *Hudson* action had alleged failure to pay all minimum and overtime wages (§§ 510, 1194, 1197); failure to provide compliant meal periods (§§ 226.7, 512); failure to provide rest periods (§ 226.7); failure to provide accurate wage statements (§ 226); failure to pay wages owed at termination (§§ 201, 202, 203); unfair business practices (Bus. & Prof. Code, § 17200 et seq.); and derivative penalties under PAGA (§ 2698 et seq.). The court in *Hudson* granted final approval of a settlement and entered judgment.

The *Hudson* settlement contained a lengthy definition of "RELEASED CLAIMS." The definition included a release of: "any and all known and unknown wage and hour related claims that arise out of the facts asserted in the operative complaint in the Action," which included but was not limited to the asserted claims and claims under sections 201, 202, 203, 226, 226.7, 510, 512, 558, 1194 and 2698 et seq., among other code provisions and orders, "based on the facts in the complaint." The period of the

7

released claims ran from October 24, 2012, until the date of preliminary approval.

The release explicitly exempted claims for damages under section 226, subdivision (e) brought by Meza in the current case concerning whether Pacific Bell violated section 226 by failing to list on its wage statements "hours worked" and "hourly rate" for certain overtime payments.

On July 24, 2020, the trial court granted Pacific Bell's summary adjudication motion. The trial court agreed that Meza's PAGA claims were barred under the theory of res judicata.

On July 28, 2020, Meza appealed to the Fifth Appellate District. On December 20, 2021, our Supreme Court transferred this matter to the Second Appellate District.

## DISCUSSION

### I. Except for the order to strike, the trial court orders are appealable

"The right to appeal in California is generally governed by the 'one final judgment' rule, under which most interlocutory orders are not appealable." (*In re Baycol Cases I & II* (2011) 51 Cal.4th 751, 754 (*Baycol*).) All four orders that Meza challenges are interlocutory orders. Because the existence of an appealable order is a jurisdictional prerequisite to an appeal (*Jennings v. Marralle* (1994) 8 Cal.4th 121, 126), we first consider whether the orders are appealable.

#### A. *The class certification and PAGA orders are appealable under the death knell doctrine*

The death knell doctrine is an exception to the one final judgment rule. (*Baycol, supra,* 51 Cal.4th at p. 760.) Under the death knell doctrine, an order "that entirely terminates class

8

claims is appealable." (*Id.* at pp. 757–758.) The death knell doctrine allows for an immediate appeal from a denial of representative claims because " 'the action has in fact and law come to an end, as far as the members of the alleged class are concerned.' " (*Id.* at p. 760.) Earlier in this case, in dismissing Meza's first appeal, the Fifth District concluded that the death knell doctrine permits an interlocutory appeal only after any representative PAGA claims have also been dismissed. (*Meza v. Pacific Bell Telephone Co.*, *supra*, F077604.)[2]

The parties agree that the class certification order and PAGA order are appealable under the death knell doctrine. We concur. The trial court refused to certify any class claim other than one relating to Pacific Bell's wage statements. Once the trial court granted summary adjudication of that claim in the wage statement order, no class claims remained. The PAGA order similarly falls within the express terms of the death knell doctrine. The class certification and PAGA orders are therefore appealable.

---

[2] The Fifth Appellate District in making this ruling relied on *Young v. RemX, Inc.* (2016) 2 Cal.App.5th 630, 635 and *Munoz v. Chipotle Mexican Grill, Inc.* (2015) 238 Cal.App.4th 291, 310. The holding of these cases—that pending PAGA claims prevent the appealability of class claims under the death knell doctrine—may be subject to debate. We do not, however, need to reach or decide the issue. Because this principle of law was "necessary to the decision" of the Fifth Appellate District in this case dismissing Meza's appeal, it "must be adhered to" under the law of the case doctrine, regardless of whether we agree with that conclusion. (*Kowis v. Howard* (1992) 3 Cal.4th 888, 892–893.) For this reason, any attempt by Meza to appeal under the death knell doctrine before the PAGA order issued would have been futile.

**B.**    *The wage statement order is appealable under the death knell doctrine*

The appealability of the wage statement order presents a closer question.  After considering the parties' supplemental briefing, we conclude that this order, too, is appealable.

Both parties have flipped their positions on the appealability of this order.  In the initial briefing, Meza argued the order was appealable and Pacific Bell appeared to contend it was not.  After we requested further briefing, Meza stated that the appeal of this order could be dismissed, but Pacific Bell argued that it was appealable and provided relevant authority.  Despite the oddity of Pacific Bell's change of heart, its argument is persuasive.

The complexity of the question relates to the death knell doctrine's insistence that the orders appealed from dispose of all class claims but leave individual claims intact.  The "doctrine renders appealable only those orders that effectively terminate class claims but permit individual claims to continue." (*Baycol*, *supra*, 51 Cal.4th at p. 754.)  *Baycol,* for example, in the context of deciding whether an appeal was timely, held that an appeal from a demurrer dismissing *both* class and individual claims together would have been premature as such an order was not appealable.  (*Id*. at pp. 760–761.)  The appeal from the subsequent judgment was therefore timely.  (*Id*. at pp. 761–762.)

If the trial court had included both class and individual claims in the wage statement order, which decides the claim on the merits, it would present an even more difficult question than that presented in *Baycol*.  On the one hand, an order applying equally to both types of claims may not be appealable under *Baycol*, *supra*, 51 Cal.4th at page 760.  On the other hand, the

10

summary judgment order was unusual in that it disposed of the last class claim still standing. Arguably, *Baycol*'s insistence on a divergence between class and individual claims is satisfied by the many individual claims still to be decided with respect to the other claims—i.e., those as to which class certification was denied. There are no cases of which we are aware or cited by the parties that discuss application of the death knell doctrine in these circumstances.

We need not reach this thorny issue, however, because as urged by Pacific Bell we follow the approach of *Arce v. Kaiser Foundation Health Plan, Inc.* (2010) 181 Cal.App.4th 471, which contains facts analogous to those presented here. There, the trial court sustained a demurer to a claim that was brought " 'individually and on behalf [of a class] of other similarly situated people.' " (*Id.* at p. 485, fn. 9.) The appellate court entertained the appeal under the death knell doctrine on the basis that it was unclear whether defendant intended to demur to the individual claim and whether the trial court sustained a demurrer to the individual claim. (*Ibid.*) The appellate court noted that it was limiting its review to the dismissal of the class claims and trusted that the trial court would faithfully apply its ruling to the individual claim if necessary. (*Ibid.*)

The same situation is presented here. Both Pacific Bell's motion and the trial court's order granting summary adjudication of the claim under section 226, subdivision (a)(9) refer only to the certified class claim. Because, on this record, it was unclear that the trial court intended to summarily adjudicate anything other than the class claim, we exercise jurisdiction under the death knell doctrine just as the court did in *Arce v. Kaiser Foundation Health Plan, Inc.*, *supra*, 181 Cal.App.4th 471. In addition to

11

following the dictates of the death knell doctrine, this approach makes good sense here, where the wage statement order, by deciding the last class claim, made the class certification order appealable, where the parties have fully briefed the wage statement issue, and where the issues are of material significance to all parties.

### C. *The order to strike is not appealable*

In the supplemental briefing, Meza takes the position that we may dismiss the appeal from the order to strike while Pacific Bell argues the order is appealable. On this order, we agree with Meza. Putting aside the death knell doctrine issues, this order poses a different problem: Meza failed to mention it in his notice of appeal.

"[I]f no appeal is taken from . . . an order, the appellate court has no jurisdiction to review it." (*Norman I. Krug Real Estate Investments, Inc. v. Praszker* (1990) 220 Cal.App.3d 35, 46; accord, *Sole Energy Co. v. Petrominerals Corp.* (2005) 128 Cal.App.4th 212, 240.) While a notice of appeal must be liberally construed, this policy " 'does not apply if the notice is *so specific* it cannot be read as reaching a judgment or order not mentioned at all.' " (*In re J.F.* (2019) 39 Cal.App.5th 70, 78.) Where a notice of appeal "explicitly describe[s]" an order (or, as here, multiple orders), it "would be beyond liberal construction to view that notice of appeal as relating to a further and different order." (*Russell v. Foglio* (2008) 160 Cal.App.4th 653, 661.)

We cannot reasonably construe Meza's notice of appeal to encompass the order to strike. Meza's notice of appeal states that he appeals "[o]rders denying Motion for Class Certification, dismissing certified 226(a)(9) claim, and dismissing PAGA claim (death knell doctrine)." The notice does not mention the order to

12

strike Meza's section 226, subdivision (a)(6) claim. Meza's clear delineation of the limited scope of his appeal precludes a finding of an intent by Meza to appeal from the order to strike.

Pacific Bell also argues that notwithstanding the lack of a notice of appeal for this order, it may still be reviewable under Code of Civil Procedure section 906 which, when it applies, permits the review of nonappealable intermediate orders. Even assuming Code of Civil Procedure section 906 applied in death knell doctrine cases, it would not apply here.[3] To qualify under that code section, the order must be a "necessary predicate" to an appealable order. (*Erikson v. Weiner* (1996) 48 Cal.App.4th 1663, 1671, disapproved of on another ground in *Kabran v. Sharp Memorial Hospital* (2017) 2 Cal.5th 330, 347; accord, *Cahill v. San Diego Gas & Electric Co.* (2011) 194 Cal.App.4th 939, 948.) The order to strike is not a necessary predicate to either the class certification or PAGA orders. (See *Lopez v. Brown* (2013) 217 Cal.App.4th 1114, 1136–1137 [Code Civ. Proc., § 906 did not permit review where earlier order "deal[t] with unrelated issues"].) For these reasons, we dismiss Meza's appeal of the order to strike.

## II. The trial court erred in denying certification based on inconsistent applications of Pacific Bell policies

Meza contends that the district court abused its discretion in denying class certification. Specifically, Meza contends that the legality of the Pacific Bell company guidelines, communicated

---

[3] While we do not reach the issue, courts have expressed doubt that the language of Civil Procedure Code section 906 encompasses death knell doctrine appeals. (*Nixon v. AmeriHome Mortgage Co., LLC* (2021) 67 Cal.App.5th 934, 944.)

to Pacific Bell premises technicians in writing, is a common issue that should be resolved as to all class members.  We agree.

**A.** ***Standard of review and the law of class certification***

Code of Civil Procedure section 382 authorizes class actions "when the question is one of a common or general interest, of many persons, or when the parties are numerous, and it is impracticable to bring them all before the court."  A trial court is generally afforded great latitude in granting or denying class certification, and we normally review a certification ruling for an abuse of discretion.  (*Sav-On Drug Stores, Inc. v. Superior Court* (2004) 34 Cal.4th 319, 326–327.)  A trial court ruling supported by substantial evidence generally will not be disturbed unless (1) improper criteria were used or (2) erroneous legal assumptions were made.  (*Linder v. Thrifty Oil Co.* (2000) 23 Cal.4th 429, 435–436.)  A trial court's decision that rests on an error of law is an abuse of discretion.  (*In re Tobacco II Cases* (2009) 46 Cal.4th 298, 311.)

The parties disputed in the trial court whether common interest of law and fact predominated—one of the factors for class certification.  (*Brinker Restaurant Corp. v. Superior Court* (2012) 53 Cal.4th 1004, 1021 (*Brinker*).)  This question "hinges on 'whether the theory of recovery advanced by the proponents of certification is, as an analytical matter, likely to prove amenable to class treatment.' [Citation.]  A court must examine the allegations of the complaint and supporting declarations [citation] and consider whether the legal and factual issues they present are such that their resolution in a single class proceeding would be both desirable and feasible.  'As a general rule if the defendant's liability can be determined by facts common to all

14

members of the class, a class will be certified even if the members must individually prove their damages.' " (*Id.* at pp. 1021–1022, fn. omitted.)

**B.** ***The trial court erred in ruling that individualized issues predominated***

The trial court order denying class certification dealt with an often-litigated class certification issue:  whether supervisors' diverse practices with respect to uniform written policies makes class certification inappropriate.  The trial court held that individualized issues predominated because the managers' declarations indicated that "the actual management practices of [Pacific Bell]'s supervisors result[ed] in a diverse application of the company's Premises Technician Guidelines."  On the record before us, based on applicable law, we conclude that this ruling constituted an abuse of discretion.

Meza's claims related to meal and rest breaks for premises technicians.  "State law obligates employers to afford their nonexempt employees meal periods and rest periods during the workday.  [Citations.]  Labor Code section 226.7, subdivision (a) prohibits an employer from requiring an employee 'to work during any meal or rest period mandated by an applicable order of the Industrial Welfare Commission.' " (*Brinker*, *supra*, 53 Cal.4th at p. 1018, fns. omitted.)  Industrial Welfare Commission wage order No. 4-2001 likewise prescribe meal and rest periods.  (Cal. Code Regs., tit. 8, § 11040, subds. 11(A), 12(A).)  "Employers who violate these requirements must pay premium wages." (*Brinker*, at p. 1018; Cal. Code Regs., tit 8, § 11040, subds. 11(B), 12(B).)

Meza alleged that Pacific Bell's policies placed too many restrictions on employees' rest and meal breaks.  This issue

involves analyzing " 'whether the employees' off-duty time is so substantially restricted that they are unable to engage in private pursuits.' " (*Frlekin v. Apple Inc.* (2020) 8 Cal.5th 1038, 1052.)

Meza emphasizes that he bases his claim on a theory that Pacific Bell's policies were unlawful because they retained too much control over the premises technicians during their mealtimes. It is undisputed that Pacific Bell maintained written policies. The guidelines were provided to premises technicians, who were asked to sign an agreement stating that they had received the guidelines, read them, and agreed to comply with them. The record contains two such agreements signed by Meza himself. A premises technician's failure to sign the agreement did not excuse him or her from having to comply with the guidelines.

Under these circumstances, do individualized inquiries predominate because Pacific Bell witnesses testified that they apply the various written guidelines in diverse ways in practice? We follow prior case law holding that individualized inquiries do not predominate in these circumstances.

### 1. *Brinker* discussed uniform policies as a basis for class certification

Meza relies heavily on *Brinker*, *supra*, 53 Cal.4th 1004, a case involving, among other things, class certification with respect to a company's rest break policy. *Brinker* is an important class certification case that provides basic rules for our analysis but does not answer the specific question at issue here.

*Brinker*, *supra*, 53 Cal.4th at page 1034, held foundationally that trial courts should generally resolve class certification issues before resolving the legal merits of an action. More relevant for purposes of this appeal, *Brinker* dealt with the

16

issue of uniform corporate policies as a basis for class certification. (*Id.* at pp. 1032–1034.) In *Brinker*, the trial court had certified a class based on the company's uniform rest break policies. (*Id.* at pp 1032–1033.) The Court of Appeal reversed, reasoning that while the policies about rest breaks were uniform, individual employees could choose to "waive" their rest breaks and continue working; thus, according to the Court of Appeal, any showing that plaintiffs missed breaks or took shortened breaks would not necessarily show violations of the Labor Code without further individualized proof. (*Id.* at p. 1033.)

The Supreme Court reversed the Court of Appeal, concluding that class certification was appropriate. The plaintiff had "presented evidence of, and indeed Brinker conceded at the class certification hearing the existence of, a common, uniform rest break policy." (*Brinker*, *supra*, 53 Cal.4th at p. 1033.) "The rest break policy was established at Brinker's corporate headquarters; it is equally applicable to all Brinker employees." (*Ibid.*) It concluded that "[n]o issue of waiver ever arises for a rest break that was required by law but never authorized; if a break is not authorized, an employee has no opportunity to decline to take it." (*Ibid.*) Because plaintiff "pleaded and presented substantial evidence of a uniform rest break policy authorizing breaks only for each full four hours worked, the trial court's certification of a rest break subclass should not have been disturbed." (*Ibid.*)

While relevant, *Brinker* does not answer the question presented here. In *Brinker,* there was no dispute that the company had a uniform policy and no assertion that the company applied it in diverse ways. The only issue was whether the employees' individual decisions about whether to take breaks

17

rendered the case inappropriate for class certification. (*Brinker*, *supra*, 53 Cal.4th at pp. 1033–1034.) The Supreme Court held that class certification was appropriate under these circumstances.

**2. Applying post-*Brinker* case law, we conclude that the trial court erred in denying class certification**

The progeny of *Brinker* has dealt more directly with the question of class certification based on uniform policies that are allegedly applied by corporate managers in different ways. This has proved to be a tricky issue for the courts. Since *Brinker*, numerous appellate courts have reversed a trial court's refusal to certify a class, where the trial court relied on a company's diverse conduct in the face of uniform policies or lack of such policies. (See, e.g., *Lubin v. The Wackenhut Corp.* (2016) 5 Cal.App.5th 926; *Alberts v. Aurora Behavioral Health Care* (2015) 241 Cal.App.4th 388; *Jones v. Farmers Ins. Exchange* (2013) 221 Cal.App.4th 986 (*Jones*); *Benton v. Telecom Network Specialist, Inc.* (2013) 220 Cal.App.4th 701; *Bradley v. Networkers Internat., LLC* (2012) 211 Cal.App.4th 1129.)

In general, cases following *Brinker* "have concluded . . . that when a court is considering the issue of class certification and is assessing whether common issues predominate over individual issues, the court must 'focus on the policy itself' and address whether the plaintiff's *theory* as to the illegality of the policy can be resolved on a classwide basis." (*Hall v. Rite Aid Corp.* (2014) 226 Cal.App.4th 278, 289.) "[W]here the theory of liability asserts the employer's uniform policy violates California's labor laws, factual distinctions concerning whether or how employees

18

were or were not adversely impacted by the allegedly illegal policy do not preclude certification." (*Ibid.*)

*Jones*, *supra*, 221 Cal.App.4th 986—a post-*Brinker* decision from this court—reversed a trial court order refusing to certify a class on facts analogous to those at issue here. In that case, plaintiffs claimed that the defendant, Farmers, "applied a uniform policy to all putative class members denying them compensation for 'computer sync time' work performed at home before the beginning of their scheduled shifts." (*Jones*, at p. 996.) In support of their class certification motion, plaintiffs relied upon a personalized memorandum issued to each employee providing they might be required to perform certain enumerated work tasks at home for which they would not be compensated (*id.* at p. 990), as well as the declarations of employees stating that they were not compensated for such tasks at home (*id.* at p. 991).

In *Jones*, *supra*, 221 Cal.App.4th at page 996, the defendant argued in opposition that it had no uniform policy denying compensation for preshift work and submitted declarations from employees "stating generally that they were not required to perform unpaid preshift work, that they requested and received approval to work overtime if necessary, and that the time required to start up their computers in the morning . . . was minimal." The trial court denied class certification, finding that "the parties disputed what tasks were required to be performed before the beginning of a shift and that Plaintiffs had failed to demonstrate the existence of a uniform policy denying compensation for preshift work." (*Id.* at p. 996.)

The *Jones* court concluded that "the trial court applied improper criteria by focusing on individual issues concerning the right to recover damages rather than evaluating whether the

19

theory of recovery is amenable to class treatment" and "that substantial evidence does not support the court's finding that common issues do not predominate." (*Jones*, *supra*, 221 Cal.App.4th at p. 997.) The *Jones* court observed that "Plaintiffs' theory of recovery based on the existence of a uniform policy denying compensation for preshift work presents predominantly common issues of fact and law," and that defendant's "liability depends on the existence of such a uniform policy and its overall impact on" the putative class members. (*Ibid.*) *Jones* noted that defendant's evidence might necessitate individual damage determinations, but these "do not preclude class certification." (*Id.* at p. 996.)

We conclude here, as the *Jones* court did, that the trial court did not apply the proper legal framework when it denied class certification. Meza's theory of liability is that the written guidelines for premises technicians were for the benefit of Pacific Bell and exerted substantial control over the premises technicians during their meal and rest periods in violation of the law. Although the trial court acknowledged that "the policies are undisputed," it concluded that the disparate manner in which employees experienced the policy through different managers rendered the claims unsuitable for class treatment. However, "the employer's liability arises by adopting a uniform policy that violates the wage and hour laws." (*Faulkinbury v. Boyd & Associates, Inc.* (2013) 216 Cal.App.4th 220, 235.) The "fact that individual inquiry might be necessary to determine whether individual employees were able to take breaks despite the defendant's allegedly unlawful policy . . . is not a proper basis for denying certification." (*Benton v. Telecom Network Specialists, Inc.*, *supra*, 220 Cal.App.4th at p. 726.)

Thus, while we express no view on the merits of Meza's allegations, we find that the question to be resolved here—whether the undisputed guidelines violate wage and hour law—is not an individualized one.

### 3.    Pacific Bell's authority is inapposite

Pacific Bell relies primarily upon a single case, *Koval v. Pacific Bell Telephone Co.* (2014) 232 Cal.App.4th 1050 (*Koval*), in which an appellate court affirmed a trial court's denial of class certification where the plaintiff challenged written corporate guidelines.  *Koval* deserves close attention because, like the current case, it involves the break policies of the respondent, Pacific Bell, for its premises technicians.  Though it involves a different set of policies (13 policies in effect at various points from 2006 through approximately 2008), it concerns the same party and area of law as those in the current case.

Despite these startling factual similarities, the record in *Koval* was different in a central way that renders it distinguishable from the facts here.  As explained below, *Koval* relied heavily on evidence that although the policies were written, they were conveyed to the employees orally, leading as a practical matter to a multiplicity of different policies.  By contrast, here—as in *Jones*—the uniform written policies were provided in writing to the Pacific Bell employees, even though they were allegedly applied in an inconsistent manner.

In *Koval*, *supra*, 232 Cal.App.4th 1050, the plaintiff (like the plaintiff here) "alleged Pacific Bell violated California law by failing to relinquish control over their activities during meal and rest break periods" (*id*. at p. 1053) and relied on "Pacific Bell's written job performance guidelines, which they claimed contain several explicit restrictions on how employees could spend their

21

meal and rest periods" (*id*. at p. 1055).  The trial court found that "the evidence revealed the policies had not been consistently applied" and denied class certification.  (*Id.* at p. 1057.)

The *Koval* court affirmed, stating that, while "[i]t is true that the *Brinker* court observed 'a uniform policy consistently applied' can support certification.  [Citation.] . . . it did not say that a case *must* proceed as a class action when there is such a facially uniform policy." (*Koval*, *supra*, 232 Cal.App.4th at p. 1059.)  Although "Pacific Bell maintained written policies that are uniform, in the sense that they are in writing, the evidence supports the trial court's conclusion that supervisors did not consistently articulate these policies to class members" but instead "*conveyed the policies to class members orally*, a practice which the evidence also shows resulted in diverse practices and differing interpretations as to what the rules required." (*Id.* at p. 1062, italics added.)  The *Koval* court noted that the managerial practice of conveying the policies in an oral and inconsistent manner contributed to the creation of "a shifting kaleidoscope of liability determinations that render this case unsuitable for class action treatment."  (*Ibid*.)

For all its similarities, *Koval* is distinguishable because it hinged on the oral and inconsistent manner the policies were conveyed to the employees.  The record in *Koval* supported that the guidelines were disseminated orally, and there is no indication that there was a practice of providing class members with written versions of the 13 different documents containing the complained-of guidelines, or of requesting that they sign an agreement stating that they had read and would comply with them. (*Koval*, *supra*, 232 Cal.App.4th at pp. 1057, 1062.)  Thus, while the plaintiffs' theory was based on a "facially uniform

22

policy" (*id.* at p. 1059), the court concluded that the policies were in fact "far from uniform" because of the manner in which they were transmitted (*id.* at p. 1062).

Indeed, the *Koval* court analogized the case before it to *Morgan v. Wet Seal, Inc.* (2012) 210 Cal.App.4th 1341, in which no written policy existed requiring employees to wear company clothing, and plaintiffs instead relied on what managers told employees in person and through e-mail and other forms of communication. (*Koval*, *supra*, 232 Cal.App.4th at p. 1062; see *Morgan*, at pp. 1344–1353.) In both *Koval* and *Morgan*, the absence of a clear company policy communicated to employees supported the appellate court's conclusion that "there was no common method to prove classwide liability because each individual plaintiff would have his or her own story." (*Koval*, at pp. 1055–1056; see *Morgan*, at pp. 1350–1353.) The *Koval* court also distinguished the case before it from *Ghazaryan v. Diva Limousine, Ltd.* (2008) 169 Cal.App.4th 1524 in which the policies at issue were distributed to employees in the form of a handbook. (*Koval*, at pp. 1055–1056.)

Here, by contrast, Meza's theory of liability is based upon written guidelines that were provided to premises technicians, who were requested to sign agreements stating that they would comply with those guidelines. The record shows this through, among other evidence, the deposition testimony of the person most knowledgeable designated by Pacific Bell. Because the written guidelines at issue here were provided in writing to premises technicians, we conclude that *Koval*, *supra*, 232 Cal.App.4th 1050 is inapposite. This case is more like *Jones*, *supra*, 221 Cal.App.4th at page 1000, which reversed the trial court's refusal to certify a class as to written policies distributed

23

to the employees, even if they were inconsistently applied in practice.[4]

### C. *The trial court must consider whether Meza may adequately represent the class*

Pacific Bell contends that, if we reverse, we should remand to allow the trial court to determine whether Meza is an adequate class representative, an issue raised but not decided below. We agree.

Pacific Bell argued that Meza is an inadequate representative because he gave inconsistent deposition testimony and engaged in purportedly dishonest conduct while employed by Pacific Bell. "A class action is a representative action in which the class representatives assume a fiduciary responsibility to prosecute the action on behalf of the absent parties." (*Earley v. Superior Court* (2000) 79 Cal.App.4th 1420, 1434.) Thus, "[c]redibility problems can be an appropriate ground to reject the adequacy of a class representative." (*Payton v. CSI Electrical Contractors, Inc.* (2018) 27 Cal.App.5th 832, 846.) On remand, the court should consider whether Meza is an adequate representative.

### III. The trial court correctly granted summary adjudication as to Meza's wage statement claim

Section 226, subdivision (a)(9) provides that an employee wage statement must include "all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee." Meza contends

---

[4] There are differences between the 2011 guidelines and the 2013 and 2015 versions. On remand, the trial court may wish to consider whether differences among the guidelines warrant subclassing. (See *Koval*, *supra*, 232 Cal.App.4th at p. 1057.)

24

Pacific Bell violated this statute by failing to include the "rate" and "hours" attributable to Pacific Bell's overtime true-up payments.  Pacific Bell, supported by amici curiae, argues that its wage statement complies with the statute and that Meza's reading of the statute would expose employers to serious compliance burdens, disincentivize bonus pay, and result in confusing wage statements.  We find no error in the trial court's order granting summary adjudication of Meza's claim on the basis that Pacific Bell's wage statements comply with the statutory requirements.

**A.** ***Standard of review and principles of statutory construction***

"We review the ruling on a motion for summary judgment de novo, applying the same standard as the trial court." (*Manibog v. MediaOne of Los Angeles, Inc.* (2000) 81 Cal.App.4th 1366, 1369.)  "We exercise our independent judgment as to the legal effect of the undisputed facts [citation] and must affirm on any ground supported by the record."  (*Jimenez v. County of Los Angeles* (2005) 130 Cal.App.4th 133, 140.)

The propriety of the trial court's order involves the proper construction of section 226, subdivision (a)(9).  We review questions of statutory interpretation de novo.  (*County of Los Angeles v. City of Los Angeles* (2013) 214 Cal.App.4th 643, 653.)  "[O]ur primary task is determining legislative intent.  [Citation.] In doing so, we 'look first to the words of the statute, "because they generally provide the most reliable indicator of legislative intent." ' [Citations.]  Where a statutory term 'is not defined, it can be assumed that the Legislature was referring to the conventional definition of that term.' [Citations.]  We thus give the words in a statute 'their plain and commonsense meaning.'

25

[Citation.] 'Furthermore, a particular clause in a statute must be read in harmony with other clauses and in the context of the statutory framework as a whole.' " (*Heritage Residential Care, Inc. v. Division of Labor Standards Enforcement* (2011) 192 Cal.App.4th 75, 81–82.)

## B. *Meza's claim challenged Pacific Bell's failure to include hours and rates for overtime true-up*

Meza's claim under section 226, subdivision (a)(9) involved how Pacific Bell represented a lump sum overtime payment on its wage statements. For regular pay and regular overtime, the wage statements, as required, listed the "rate" and "hours" for that pay period. There is no dispute that these entries complied with statutory requirements.

Pacific Bell also, however, included a lump sum on certain wage statement titled "OVERTIME TRUE-UP PMT" (the overtime true-up). For the overtime true-up, Pacific Bell left the "rate" and "hour" columns blank. This is the entry that Meza challenges.

The overtime true-up—additional overtime wages owed based on performance bonuses earned in earlier periods—was calculated using a complex formula involving bonus amounts and hours from prior pay periods. Pursuant to Pacific Bell's incentive program, each month employees earned "points" that could be exchanged for merchandise based on the achievement of specified metrics. Pacific Bell assigned the points a cash value for tax purposes (which it called a non-cash award) and calculated the additional income taxes owed on the points (which it called a "Non-Cash Awd Tax Gross Up"). Pacific Bell generally listed these monetary amounts on the first wage statement of the month after the employee earned them.

26

Pacific Bell was required by law to include the value of the points, which was a form of bonus, in the regular rate pay for purposes of calculating the employee's overtime pay. Because employees earned the bonus over the course of an entire month and the bonus amount was not known until the close of that month, there was no way to determine the overtime owed in relation to that bonus on a pay-period by pay-period basis. Instead, Pacific Bell calculated the additional overtime owed— the overtime true-up—after the close of the month and generally reflected it in the next month's first wage statement.

By way of example, Pacific Bell paid Meza a lump sum overtime true-up in the first paycheck of June 2015 (a paycheck that covered the first two weeks in June). That overtime true-up was based on the Meza's specific bonus earned and hours worked throughout the entirety of the month of May. As stipulated to by the parties, the formula to calculate the overtime true-up paid in a lump sum at the beginning of June was: the total monetary value of the points the employee earned throughout May,[5] divided by the total hours the employee worked throughout May, with the resulting value then multiplied by one-half, and the resulting value then multiplied by the overtime hours the employee worked throughout May.

In the example to which the parties stipulated, the first June wage statement represents the overtime true-up derived from this formula as "OVERTIME TRUE-UP PMT" in the

---

[5] The value of the points from May was calculated by adding the "Non-Cash Award" and "Non-Cash Awd Tax Gross Up."

amount of $32.76.  It is the lack of "hours" and "rates" next to this figure that forms the basis for Meza's claim.

The trial court ruled that Pacific Bell's wage statements complied with statutory requirements.  The trial court found that "[t]here were no applicable hourly rates in effect during the pay period that correspond to the incentive program pay" and that the "overtime hours were worked in previous pay period for which the employees had already received their standard overtime pay." The trial court concluded that an "employer must only identify on the wage statement the hourly rate in effect during the pay period for which the employee was currently being paid and the corresponding hours worked" under section 226, subdivision (a)(9), and thus granted Pacific Bell's motion.

## C. *Pacific Bell's wage statements do not violate section 226, subdivision (a)(9)*

While Pacific Bell's calculation of overtime true-up payments is quite complicated, the statutory issue is straightforward.  Does the statutory requirement to list on the wage statement "hourly rates in effect *during the pay period*" (§ 226, subd. (a)(9)), italics added) and the "corresponding number of hours" worked at such rates (*ibid*.) encompass a requirement that Pacific Bell list the rates and hours from *prior* pay periods underlying an overtime true-up calculation?  We agree with the trial court that the statute contains no such requirement.

Section 226, subdivision (a)(9) is explicit that it requires a list of hourly rates "during the pay period."  In the example discussed above, the relevant "pay period" consists of the first two weeks in June, and none of the variables involved in the overtime true-up calculation, such as the hours worked, related to the pay

28

period.  The statute requires the first June wage statement to reflect a list of hours and rates from the first two weeks in June—not from earlier periods.  This reading of the statute is reinforced by our Supreme Court's use of language indicating that the obligation to provide information in connection with section 226 is limited to the pay period in which a statement was issued. (*Ward v. United Airlines, Inc.* (2020) 9 Cal.5th 732, 753 [§ 226 "appears to contemplate that the information supplied will be comprehensive . . . for the given pay period"]; *Oman v. Delta Air Lines, Inc.* (2020) 9 Cal.5th 762, 774 [§ 226 requires "all relevant information concerning the employee's pay during that period"].)

We cannot read into the statute obligations that are not present.  "When a statute omits a particular category from a more generalized list, a court can reasonably infer a specific legislative intent not to include that category within the statute's mandate."  (*Soto v. Motel 6 Operating, L.P.* (2016) 4 Cal.App.5th 385, 391.)  We cannot read into the statute a requirement that an employer include hours and rates from prior pay periods when the legislature omitted such a requirement.  Adding requirements for wage statements is especially unwarranted here, where payment is not a simple matter of multiplying a pre-determined rate by overtime hours, as the statute appears to contemplate, but an after-the-fact calculation based in significant part on the amount of bonus the employee happened to earn the prior month.

The parties and amici argue about whether listing information from prior pay periods would be "a simple payroll programming task," as Meza claims, or would entail "significant practical problems" for employers, as the amici curiae and Pacific Bell urge.  These issues are better addressed to the Legislature.

29

Based on the text of the statute, we hold that Pacific Bell did not violate section 226, subdivision (a)(9).

The Ninth Circuit recently reached this same conclusion in interpreting this California statute. In *Magadia v. Wal-Mart Associates, Inc.* (9th Cir. 2021) 999 F.3d 668, the Ninth Circuit also concluded that section 226, subdivision (a)(9) did not require the reporting of rates and hours from prior periods in connection with overtime adjustment payments. That case, too, involved lump sum overtime payments associated with incentive bonuses from prior periods. (*Id.* at p. 672.) This payment was calculated using a formula that included the number of hours worked during those earlier periods. (*Ibid.*) The Ninth Circuit explained that an overtime adjustment "is a non-discretionary, after-the-fact adjustment to compensation based on the overtime hours worked and the average of overtime rates," and therefore found that the calculation did not reflect "an 'hourly rate in effect during the pay period.'" (*Id.* at p. 681.) This statutory term, the Ninth Circuit reasoned, does not apply to an artificial, after-the-fact rate calculated based on overtime hours and rates from preceding pay periods that did not even exist during the time of the pay period covered by the wage statement. (*Ibid.*)[6] Though we are not bound by the Ninth Circuit's views on this issue (*Barrett v. Rosenthal* (2006) 40 Cal.4th 33, 58), we agree with its analysis.

---

[6] The Ninth Circuit cited two unpublished California appellate decisions in its analysis of this issue. (See *Magadia v. Wal-Mart Associates, Inc.*, *supra*, 999 F.3d at p. 681.) Although we are not permitted to rely on such cases (*Airline Pilots Assn. Internat. v. United Airlines, Inc.* (2014) 223 Cal.App.4th 706, 724, fn. 7), a federal court may do so (*Employers Ins. of Wausau v. Granite State Ins. Co.* (9th Cir. 2003) 330 F.3d 1214, 1220, fn. 8).

Section 226, subdivision (a)(9) does not require Pacific Bell to list hours and rates next to its calculation of an overtime true-up. The trial court correctly granted summary adjudication to Pacific Bell on this claim.

## IV. The trial court correctly granted summary adjudication of Meza's PAGA claim

Meza contends that the trial court improperly granted Pacific Bell's motion for summary adjudication of the PAGA claim. Meza argues that claim preclusion does not apply because the *Hudson* complaint did not allege the same predicate facts and violations of law as Meza alleged in this action. The parties do not dispute the essential facts, including the *Hudson* judgment and written release. As previously noted, we review the order on summary judgment de novo. (*Manibog v. MediaOne of Los Angeles, Inc., supra,* 81 Cal.App.4th at p. 1369.)

### A. *Claim preclusion bars Meza's PAGA action*

Claim preclusion, which has also been referred to as res judicata, "describes the preclusive effect of a final judgment on the merits." (*Mycogen Corp. v. Monsanto Co.* (2002) 28 Cal.4th 888, 896.) "Claim preclusion arises if a second suit involves (1) the same cause of action (2) between the same parties (3) after a final judgment on the merits in the first suit." (*DKN Holdings LLC v. Faerber* (2015) 61 Cal.4th 813, 824.) A judgment entered by stipulation is as binding as a judgment after trial. (*Consumer Advocacy Group, Inc. v. ExxonMobil Corp.* (2008) 168 Cal.App.4th 675, 694.)

Meza does not dispute the established rule that a judgment in a prior PAGA action operates as a claim preclusion bar to later lawsuits against the same employer. (*Arias v. Superior Court* (2009) 46 Cal.4th 969, 986.) Meza contends, however, that his

31

claims did not involve the same cause of action as *Hudson*, as claim preclusion requires. Meza argues that unlike the complaint in *Hudson*, here Meza alleges a violation of section 2802 for failure to reimburse expenses relating to uniforms. Moreover, *Hudson* contained some additional claims that are not present in the current action, including claims relating to compensation for loading vehicles and interference with meal and rest breaks necessitated by client appointment scheduling.

We disagree that these asserted differences between the two actions mean that the cases are not the same cause of action for claim preclusion purposes. " 'Two proceedings are on the same cause of action if they are based on the same "primary right." [Citation.] The plaintiff's primary right is the right to be free from a particular injury, regardless of the legal theory on which liability for the injury is based.' " (*Crosby v. HLC Properties, Ltd.* (2014) 223 Cal.App.4th 597, 603.) In other words, " ' "[i]f the matter was within the scope of the action, related to the subject matter and relevant to the issues, so that it *could* have been raised, the judgment is conclusive on it despite the fact that it was not in fact expressly pleaded or otherwise urged." ' " (*Amin v. Khazindar* (2003) 112 Cal.App.4th 582, 589–590.)

Meza's claims concern the same primary right as those at issue in *Hudson*. *Shine v. Williams-Sonoma, Inc.* (2018) 23 Cal.App.5th 1070 (*Shine*) is instructive. In *Shine*, the plaintiff was the member of a class action, the Morales action, against the defendant Williams-Sonoma. (*Id.* at p. 1074.) The Morales complaint sought on behalf of class members unpaid wages, alleging failure to provide meal and rest periods and certain

32

required wages. (*Id.* at p. 1077.) The plaintiff in *Shine* received a share of settlement proceeds. (*Id.* at p. 1074.)

Later, plaintiff brought a putative class action of his own against William Sonoma. (*Shine*, *supra*, 23 Cal.App.5th at p. 1074.) His action sought reporting-time pay for on-call shifts canceled during the time covered by the Morales settlement agreement, an issue not raised in the Morales complaint. (*Id.* at p. 1077.) Division Four of this district affirmed the trial court's order sustaining a demurrer on claim preclusion grounds. (*Ibid.*) The *Shine* court held that "[b]ecause reporting-time pay is a form of wages, a claim for reporting-time pay could have been raised in the [prior] action." (*Ibid.*) "The fact that no claim for reporting-time pay was alleged in [the prior action] d[id] not alter [the court's] determination that the same primary right, to seek payment of wages due, was involved in both . . . case[s]." (*Ibid.*)

*Villacres v. ABM Industries Inc.* (2010) 189 Cal.App.4th 562 (*Villacres*) similarly found an earlier class claim settlement barred a plaintiff's PAGA claims under the doctrine of claim preclusion. Both the claims in the prior lawsuit and in plaintiff's action required proof of a Labor Code violation. (*Id.* at p. 584.) Though the plaintiff alleged additional claims under PAGA, including violations of additional Labor Code provisions, the court found that these claims all "were within the scope of the [prior] litigation and were related to the subject matter and issues in that action: the payment of wages and penalties by the same employer." (*Villacres*, at p. 584.)

Here, both *Hudson* and the current action alleged a failure to pay wages in connection with Pacific Bell's purported failure to provide compliant meal and rest periods, as well as a failure to provide accurate wage statements and failure to pay wages owed

33

at termination. The only claim asserted by Meza that was not asserted in *Hudson* is a claim under section 2802 for failure to pay for upkeep of uniforms. But this, too, is a claim for "the payment of wages." (*In re Work Uniform Cases* (2005) 133 Cal.App.4th 328, 338 [payment for work uniforms is form of wage].) It could have been brought in *Hudson*. Indeed, the *Villacres* plaintiff likewise asserted a section 2802 claim that had not been raised in the prior action, and the court held that the doctrine of claim preclusion nevertheless applied. (*Villacres*, *supra*, 189 Cal.App.4th at p. 584.) Meza does not seek to distinguish these decisions nor identify any contrary authority.

**B.** *The* **Hudson** *release does not waive claim preclusion*

Meza argues that the settlement agreement in *Hudson* waived Pacific Bell's claim preclusion defense. We disagree.

"Although 'a stipulated judgment normally concludes all matters put into issue by the pleadings, the parties can agree to restrict its scope by expressly withdrawing an issue from the consent judgment.' " (*Sargon Enterprises, Inc. v. University of Southern California* (2013) 215 Cal.App.4th 1495, 1507.) Thus, in "applying the doctrine of res judicata, courts may examine the terms of the settlement agreement to ensure that the defendant did not waive res judicata as a defense." (*Villacres*, *supra*, 189 Cal.App.4th at p. 577.) This exception to the res judicata effect of a judgment "requires that an otherwise included issue be withdrawn by an express reservation." (*Ellena v. State of California* (1977) 69 Cal.App.3d 245, 261.)

Nothing in the *Hudson* release waives the claim preclusion effect of the judgment. To the contrary, the *Hudson* settlement broadly releases "any and all known and unknown wage and hour

34

related claims that arise out of the facts asserted in the operative complaint in the Action." The release includes "without limitation," the claims in the complaint. The *Hudson* release does expressly preserve Meza's claims about the legality of Pacific Bell's wage statements under section 226 (i.e., the claim that was the subject of the trial court's wage statement order discussed in detail above). But Meza points to no language preserving his PAGA claims.

Meza argues that because the *Hudson* release does not use language releasing claims that "could have been" alleged in the complaint, "the claims released by the *Hudson* settlement are specific and narrow." We disagree. "As with any contract, the language of a settlement agreement must be viewed in its entirety, and, if possible, every provision must be given effect." (*Shine*, *supra*, 23 Cal.App.5th at p. 1080.) The *Hudson* release encompasses "any and all" claims, "known and unknown," arising from the facts alleged in the *Hudson* complaint, including, without limitation, Pacific Bell's failure to pay wages for non-compliant meal and rest periods. Releases containing " 'known or unknown' " language (*Brinton v. Bankers Pension Services, Inc.* (1999) 76 Cal.App.4th 550, 559) have been described as "very broad and comprehensive in scope" (*id.* at p. 560). For example, in *Winet v. Price* (1992) 4 Cal.App.4th 1159, 1162 to 1163, the general release provided for a release of " 'any and all . . . claims, . . . damages and causes of action whatsoever, of whatever kind or nature, *whether known or unknown, or suspected or unsuspected* . . . against any other Party.' " The court found this release to be "about as complete, explicit and unambiguous as a general release can be." (*Id.* at p. 1173.)

35

Although the *Hudson* release is limited to wage and hour related claims, rather than claims of any "kind or nature" (*Winet v. Price, supra,* 4 Cal.App.4th at p. 1163), the release is comprehensive as to wage and hour claims. *Shine* and *Villacres* are once again instructive as they both rejected attempts by the plaintiff to construe a release narrowly as a waiver of res judicata. (*Shine, supra,* 23 Cal.App.5th at pp. 1078–1080; *Villacres, supra,*189 Cal.App.4th at pp. 585–587.) Although the release here does not include the phrase "could have been" alleged, the release uses other broad language to cover such claims. Meza's contrary interpretation—that the release here is limited to the facts set forth in the complaint—would render the "any and all known and unknown wage and hour related claims" language a nullity. Reading the release as a whole, as we must, we conclude that the trial court properly granted summary adjudication of Meza's PAGA claim.

### C. *Meza cannot pursue claims outside of the* **Hudson** *settlement date range*

Meza asserts that, notwithstanding the *Hudson* release by its terms covering claims dating back to 2012, the release should be considered ineffective for claims that predate the statute of limitations period, which Meza states is October 2015. First, we deem this argument waived, because Meza has failed to assert any citation to legal authority in support of the argument. (*Hoffmann v. Young* (2020) 56 Cal.App.5th 1021, 1029.) Even were we to reach it, Meza's argument lacks merit. At least one court has found that nothing in the PAGA statute precludes a plaintiff "from releasing PAGA claims outside the limitations period of her own claim." (*Amaro v. Anaheim Arena Management, LLC* (2021) 69 Cal.App.5th 521, 541.) Moreover,

the time has long passed for raising a theoretical argument that the *Hudson* court should not have granted judgment as to earlier claims. Any such error " 'could have been corrected only on an appeal from the judgment or other timely and direct attack thereon; but the judgment, having become final, is not subject to review in another action for error committed in the exercise of the court's jurisdiction.' " (*Aerojet-General Corp. v. American Excess Ins. Co.* (2002) 97 Cal.App.4th 387, 398.)

Meza argues that *Hudson* did not settle PAGA claims that postdated the settlement. Again, Meza waived this argument by failing to cite to legal authority. (*Hoffmann v. Young, supra,* 56 Cal.App.5th at p. 1029.) Moreover, Meza's argument lacks merit because it seeks to assert claims from after Meza left Pacific Bell's employment. (See *Robinson v. Southern Counties Oil Co.* (2020) 53 Cal.App.5th 476, 483–484 [barring representative action from after individual representative left company].) Accordingly, Meza cannot assert these later claims.

## DISPOSITION

The appeal from the order disposing of Dave Meza's Labor Code section 226, subdivision (a)(6) claim is dismissed. The order denying class certification is reversed with directions to the trial court to consider whether Meza is an adequate and typical class representative. The orders granting summary adjudication of Meza's section 226, subdivision (a)(9) and the PAGA claims are affirmed. The parties are to bear their own costs on appeal.

CERTIFIED FOR PARTIAL PUBLICATION.


LIPNER, J.[*]


We concur:



EDMON, P. J.



LAVIN, J.



---

[*] Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.